In the Matter of The MARRIAGE OF Gary Wayne JEFFRIES and Tammy Rena Jeffries and In The Interest of Jarod Jeffries, A Child.

No. 06–03–00126–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 23, 2004.

Decided Aug. 31, 2004.

Bryan K. Gallerson, Spigner & Gallerson, Inc., Plano, and Russell A. "Chip" Pelley, Attorney At Law, Sherman, TX, for appellant.

Jack L. McGowen, Attorney At Law, Sherman, TX, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Gary Wayne Jeffries and Tammy Rena Jeffries were married October 8, 1988, and had one son, Jarod. Around July 4, 2001, the couple separated, and Gary filed for divorce December 3, 2001. Tammy answered the suit and filed a counter-petition seeking divorce. Each of the parties asked to be appointed joint managing con-

servator with the exclusive right to determine Jarod's primary residence.

Following a split two-day bench trial occurring February 14, 2003, and April 3, 2003, the trial court granted a divorce between Gary and Tammy (on the ground of insupportability), determined custody, and divided the marital estate. Jarod was twelve years old at the time of the divorce. The final order grants joint managing conservatorship over Jarod to both Gary and Tammy, with Jarod's primary residence being exclusively established by Tammy. The trial court ordered Gary to pay Tammy $700.00 per month for child support until Jarod reaches eighteen years of age.[1] The final decree also divides the marital property between Gary and Tammy, and orders Gary to make a payment of $15,000.00 to Tammy, secured by an owelty lien on Gary's separate property. By two issues, Gary appeals the order, contending the trial court abused its discretion (1) by appointing Tammy primary joint managing conservator; and (2) by awarding Tammy the $15,000.00 payment.

## I. CONSERVATORSHIP

As noted, the trial court granted joint managing conservatorship of Jarod to both Gary and Tammy. Tammy was granted the exclusive right to establish Jarod's primary residence. The trial court, in its findings of fact and conclusions of law, found it was in the best interest of Jarod that Gary and Tammy be appointed joint managing conservators, with Jarod being in the possession of Tammy, except during the periods set forth in the standard possession order. The possession order provides for extended possession by Gary. Gary contends the trial court erred because Tammy's conduct and living standards are such that she is unfit to be Jarod's primary managing conservator.

In determining issues of conservatorship and possession of a child, the primary consideration of the court is the best interest of the child. *See* TEX. FAM. CODE ANN. § 153.002 (Vernon 2002). The trial court is given wide latitude in determining the best interests of the children and will be reversed only for abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982). A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We may not reverse for abuse of discretion merely because we disagree with a decision of the trial court. *Id.* at 242.

In Texas, there is a rebuttable presumption that the appointment of parents as joint managing conservators is in the best interest of the child. TEX. FAM. CODE ANN. § 153.131(b) (Vernon 2002); *Martinez v. Molinar*, 953 S.W.2d 399, 402 (Tex.App.-El Paso 1997, no writ). Once a court has appointed joint managing conservators, the court is required to designate which parent has the exclusive right to determine the primary residence of the child. TEX. FAM. CODE ANN. § 153.134(b)(1) (Vernon Supp.2004–2005). The matter of determining who should be appointed managing conservator is left to the sound discretion of the trial court. *Martinez*, 953 S.W.2d at 403; *Altamirano v. Altamirano*, 591 S.W.2d 336, 338 (Tex.Civ.App.-Corpus Christi 1979, no writ). The trial court is in a better position to determine what will be in the best interest of the child since it

---

1. This sum reflects the amount of money Gary was receiving from Social Security for Jarod's support due to Gary's disability.

faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent. *Martinez*, 953 S.W.2d at 403. Its judgment will not be disturbed on appeal unless there has been a clear abuse of discretion.

When there is some evidence of a substantive and probative character to support the trial court's decision, no abuse of discretion occurs. *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 14 (Tex.App.-Waco 2002, no pet.). The determination of conservatorship issues is guided by the best interest of the child and is "intensely fact driven." *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex.2002).

Gary contends there is ample evidence to show that Tammy is unfit to be the primary conservator of their child. He first cites evidence Tammy is an admitted drug addict. Tammy testified she has had a problem with drugs and was once addicted to pain medication. She testified that, while she was living with Gary, she had a drug problem and that she probably drove on occasion while under the influence of drugs. Duanne Bragg, appointed by the court to conduct a social study, testified she learned, through her investigation, of an incident where Tammy, while transporting Jarod and another child, stopped her vehicle at a roadside park and went to sleep. Bragg also testified there have been allegations Tammy continues to use drugs. Tammy testified, however, that after leaving Gary she checked herself into a rehabilitation facility and has not taken pain medication since July 4.[2] Tammy testified Gary is currently on potent pain medication and is unable to properly care for Jarod. She testified that, when she lived with Gary, "he laid in the bed 24/7, smoked cigarettes and drank Dr. Pep-

pers, . . . ." Gary testified he is on various prescription pain medications in connection with neck fusion surgery he underwent.

Gary also contends the trial court ignored the evidence of instability in Tammy's life when it appointed her primary managing conservator. Gary points out that Tammy has been fired from several jobs. Tammy is, however, the only parent currently employed. She works at CIGNA Health Care earning $9.60 an hour. Gary is currently unemployed and on disability from spinal surgery.

Gary further points out that Tammy dated a man after the separation, and allowed him to live with her and Jarod for a short period of time. Gary too, however, has been living with his girlfriend for several months, and Bragg testified that, when Gary has Jarod, his girlfriend takes care of transporting him to school. Tammy testified she was Jarod's primary caretaker. She testified she took care of him, took him to his baseball games, school, and anywhere he needed to go.

Finally, Gary contends the trial court abused its discretion by failing to consider Bragg's recommendations. On the first day of trial, February 14, 2003, Bragg testified about the social study the court appointed her to conduct. She concluded in her study that Jarod needed to stay with Gary. Bragg cited as major concerns allegations that Tammy was continuing to use drugs and that she has a live-in boyfriend. She testified that, after Jarod stays with his mother, he is more hyper, more argumentative, and nonresponsive— but after he stays with his father, he calms down. Bragg concluded Jarod would have a more stable life with his father than he would with his mother.

Jarod initially signed and filed a preference to live with his father, but later ex-

---

**2.** It is not clear from the record what year Tammy ceased using pain medication.

pressed to the trial court, in chambers, his desire to live with his mother. Bragg testified Jarod does not want to disappoint his mother, and that may have influenced his decision to change his living preference to his mother. Bragg went on to state Jarod loves both his parents and has a good relationship with each.

Patti Andrews, a licensed professional counselor, testified about her counseling sessions with Jarod. Andrews testified Jarod has consistently told her he wants to live with his mother. She testified both parents love Jarod, and there is nothing about Tammy that would make her unfit to care for Jarod.

The evidence in this case was conflicting as to which parent should determine Jarod's primary place of residence. Jarod's wishes were to be placed with his mother. See TEX. FAM.CODE ANN. § 153.009(b) (Vernon 2002) (authorizing consideration of child's desires). A trial court does not abuse its discretion when it makes a decision on conflicting evidence. See Kirkpatrick v. Mem'l Hosp., 862 S.W.2d 762, 776 (Tex.App.-Dallas 1993, writ denied). Based on the conflicting testimony, we conclude the trial court did not abuse its discretion by appointing Tammy joint managing conservator with the exclusive right to establish Jarod's primary residence. The trial court was in a better position to determine what will be in the best interest of Jarod since it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent. See Altamirano, 591 S.W.2d at 338. Accordingly, we overrule Gary's first point of error.

## II. DIVISION OF PROPERTY

▇▇▇ Gary also complains of the $15,000.00 payment he was ordered to make to Tammy and of the owelty lien impressed on his residence to secure that payment. The Family Code requires the trial court to order a division of the estate in a manner the court deems just and right, having due regard for the rights of each party. TEX. FAM.CODE ANN. § 7.001 (Vernon 1998). The trial court is afforded wide discretion in dividing the marital estate, and its decision will not be disturbed absent a clear abuse of that discretion. Schlueter v. Schlueter, 975 S.W.2d 584, 589 (Tex.1998); Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex.1985). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. Powell v. Swanson, 893 S.W.2d 161, 163 (Tex.App.-Houston [1st Dist.] 1995, no writ); Stout v. Christian, 593 S.W.2d 146, 151 (Tex.Civ. App.-Austin 1980, no writ).

The property divided among the parties (as shown by the judgment and findings of fact) is as follows:

| Assets | Husband | Wife |
|---|---|---|
| Community Property | $ 46,526 | $ 11,432 |
| Equalization for separate property house | | 15,000 [3] |
| 1/2 (each) of Husband's Retirement | ???? | ???? |
| **Totals** | **$ 46,526 + 1/2 Ret.** | **26,432 + 1/2 Ret.** |
| **Debts:** | **$65,994.62 [4]** | **-0-** |
| **NET TO EACH PARTY:** | **— $19,468.62 ( + 1/2 ret)** | **26,432 + 1/2 retirement** |

3. The house was Gary's separate property, but the community completed paying off the purchase money mortgage. The $15,000.00 was awarded to reimburse Tammy for the economic contribution made by the community toward Gary's separate property.

4. After the mortgage was paid, Gary and Tammy took out a community debt home

The record shows the community paid over $34,000.00 on the mortgage. It is clear that the $15,000.00 award is supportable as a return to the community for the economic benefit to Gary's separate property because of those payments. *See* Tex. Fam.Code Ann. §§ 3.401–.406 (Vernon Supp.2004–2005).

That does not, however, necessarily mean the overall division of property is supportable. We have reviewed the record, and it is entirely clear, as acknowledged by the judgment, the home equity loan was taken out by the parties as a community loan, although it was then secured by Gary's separate property house.

In dividing the property, the debt load created by that loan was not considered. No findings about that award were made in the findings of fact or conclusions of law, but the judgment assessed the entirety of the debt solely against Gary. As a result of the failure to consider that debt, the net value of the community awarded to Gary was reduced to nearly a negative $20,000.00, while Tammy remained with a positive $26,432.00. We recognize that the failure of the findings and judgment to provide any information about the value of Gary's retirement account will adjust that award, but with both parties receiving one half of its value, the mathematical difference between the amounts awarded should remain unaltered.

■ In this case, the court ordered Gary to assume a community debt that far exceeded any other debt of the estate. Because such a debt is a legally relevant factor in dividing the community estate, a court may abuse its discretion if it fails to consider such a factor. *See Murff v. Murff,* 615 S.W.2d 696, 699 (Tex.1981) (spouse's

debt as factor in property division). The trial court, in exercising its discretion, may consider many factors, including the parties' earning capacities, education, business opportunities, physical condition, financial condition, age, size of separate estates, nature of the property, and the benefits the spouse who did not cause the breakup of the marriage would have enjoyed had the marriage continued. *Id.; Walston v. Walston,* 971 S.W.2d 687, 691 (Tex.App.-Waco 1998, pet. denied).

■ Although the trial court does not have to divide the community property equally, its division must be equitable. *Zieba v. Martin,* 928 S.W.2d 782, 790 (Tex. App.-Houston [14th Dist.] 1996, no writ); *Schuster v. Schuster,* 690 S.W.2d 644, 645 (Tex.App.-Austin 1985, no writ). That means that, although the court need not divide the community estate equally, a disproportionate division must be supported by some reasonable basis. *Smith v. Smith,* No. 10–00–00409–CV, 2004 WL 1418630, at *5, 143 S.W.3d 206, 214 (Tex. App.-Waco June 23, 2004, no pet. h.); *Archambault v. Archambault,* 763 S.W.2d 50, 51 (Tex.App.-Beaumont 1988, no writ).

■ We review the trial court's division of property using an abuse of discretion standard. *Murff,* 615 S.W.2d at 700; *Walston,* 971 S.W.2d at 691. Legal and factual sufficiency are not independent grounds of error, but relevant factors in assessing whether the trial court abused its discretion. *O'Carolan v. Hopper,* 71 S.W.3d 529, 532 (Tex.App.-Austin 2002, no pet.). To constitute an abuse of discretion, the property division must be manifestly unfair. *See Mann v. Mann,* 607 S.W.2d 243, 245 (Tex.1980).

equity loan of $69,600.00, using the house (Gary's separate property) as collateral for the

note. The debt shown above is the remaining balance on that note.

We have reviewed the record. Although it is true that Gary's separate property is the most valuable asset shown by either party, there is evidence from which it could be concluded that it is also encumbered to between seventy and eighty percent of its appraised value, and that the loan proceeds benefited the community. The result of this division is to not merely create a disproportionate division of the estate, but to value one estate at a negative $20,000.00, while leaving the other $26,000.00 in the black. We find no reasonable basis for the disproportionate division of community assets and liabilities of the parties, and none was suggested by counsel during trial or on appeal. Gary's second point of error is sustained.

## III. CONCLUSION

We affirm the judgment as to its determination of conservatorship of the child. We reverse the judgment as to the property division, dissolve the owelty lien, and remand the case for a redetermination of the division of the property in light of this opinion.[5]