**Opinion filed July 26, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00180-CV

_____

## DUSTIN MCCLAIN SMALLRIDGE

V.

## PATRICIA ROBIN SMALLRIDGE

**On Appeal from the County Court at Law**

**Coryell County, Texas**

**Trial Court Cause No. 09-8792**

### M E M O R A N D U M   O P I N I O N

On May 3, 2010, the trial court entered its final decree of divorce between Dustin McClain Smallridge and Patricia Robin Smallridge.[1]  Insofar as the issues in this appeal are concerned, the trial court appointed Dustin and Patricia joint managing conservators of their three children, C.M.S. and C.M.S., who are twins, and E.N.S.  Patricia was awarded the sole right to establish the primary residence of the children.  The trial court entered the standard possession order as to Dustin, except that weekend periods of possession end "at the time school

---

[1]Patricia Robin Smallridge has not filed a brief in this appeal.  The burden on appeal nonetheless remains with Dustin. *Martin v. Martin*, 363 S.W.3d 221, 227–28 (Tex. App.—Texarkana 2012, no pet. h.).

resumes the following Monday." The trial court also ordered Dustin to pay spousal maintenance for thirty-six months and later entered a withholding order relative to the spousal maintenance. We affirm.

Dustin presents us with four issues. In his first issue, he claims that the trial court abused its discretion when it entered the standard possession order because his rotating schedule rendered the standard possession order unworkable. Next, in Issue Two, he asserts that the trial court should have restricted Patricia's right to establish the residence of the children to Coryell County. His final two issues, Issue Three and Issue Four, are concerned with orders that relate to spousal maintenance. We will address Issues One and Two together.

Dustin and Patricia are the parents of C.M.S., C.M.S., and E.N.S. They were married on July 15, 1995, and separated on March 10, 2009.

Dustin was employed by the Gatesville Police Department at the time of the hearing. During the time that they were married, Dustin admitted to having an affair in 2004. He testified that Patricia then began to be suspicious of his friendships with other females. He became friends with two female dispatchers at work, one of whom was Amy Clark. Although Patricia accused him of it, Dustin testified that he was not having an affair with Clark prior to his separation from Patricia. He said that he could no longer "handle it"—we assume he was referring to Patricia's suspicious nature—anymore, and on March 10, 2009, he left.

Dustin testified that he began seeing Clark at the end of April or in the first part of May 2009. At some point in time prior to November 16, 2009, the date of the hearing, Dustin moved in with Clark and her three children. It is apparent from the record that Patricia did not want the children to be around Clark. Dustin did not have the children overnight during the months of August, September, October, or the first half of November 2009. On cross-examination, he agreed that it was his choice whether to spend the nights of visitation with his children or with Clark.

Prior to the time that Dustin moved out, he was working the day shift for the Gatesville Police Department and was also working for an ambulance service. He subsequently left that employment and went to work for the Coryell County Sheriff's Department. After approximately three months, he returned to the Gatesville Police Department, and at the time of the hearing, his work week included the midnight shift on weekends. The shifts change about every three to four months. Dustin testified that the ambulance job was interfering with his

visitation and that he was no longer working for the ambulance company at the time of the hearing. Dustin testified that he had experienced difficulties in getting Patricia to work with him on alternate visitation times. He also told the court that Patricia had said that she and the children were going to move to Fort Worth. If that happened, he would not get to be involved with his children as much, and he could not drop by their school programs or join them for lunch at school. Additionally, the children would be moving away from a small town where their schools and friends are to a city where they do not know anyone and where the schools are much larger.

Patricia testified that she intended to stay in Coryell County but did not want to be tied to that should her circumstances change. As far as Dustin's relationship with Clark was concerned, Patricia had told Dustin that he had to stop texting Clark if Dustin and Patricia were going to be able to stay together. Dustin said that he would not stop. Patricia testified that she had limited Dustin's visitation because she felt that it was too early for the children to be around Clark. All three of the children had received counseling in school and were very "upset" about the divorce. According to Patricia, Dustin had not attended the children's school activities since March 2009, even though she had told him about them. The children attend church with Patricia. Dustin returns the children early enough on Wednesdays for them to attend Wednesday night church services with Patricia. The children are straight A students.

In the trial court, Dustin sought to have the trial court "award the children" to him. And, if the trial court did not "award the children" to him, he wanted the trial court to deviate from the standard possession order and to restrict the children's residence to Coryell County. In this court, Dustin argues that the standard visitation order is not workable because of his work schedule. Sometimes he is required to work weekends for three or four months at a time. He also maintains that he will be unable to take the children to their weekend activities if he is on duty. On those weekends when he is working at night, he will be sleeping during the day while the children are with him; the children will be with neither parent on those weekends. He also argues that summer and holiday visitation could fall at a time when the children were with a babysitter instead of with a parent, even though one parent might not be at work. If the children were restricted to Coryell County, he might "actually be involved in their lives." If they moved to Fort Worth, he effectively would be restricted to weekend visitation only. Dustin told the court, "I just think it would be better for them to be here."

In his brief, Dustin cites to the general language of TEX. FAM. CODE ANN. § 153.251(b) (West 2008). That section provides that "[i]t is the policy of this state to encourage frequent contact between a child and each parent for periods of possession that optimize the development of a close and continuing relationship between each parent and child." Section 153.251(b). Dustin also refers us to the following language from Section 153.253 of the Texas Family Code: "The court shall render an order that grants periods of possession of the child as similar as possible to those provided by the standard possession order if the work schedule or other special circumstances of the managing conservator, the possessory conservator, or the child…make the standard order unworkable or inappropriate." TEX. FAM. CODE ANN. § 153.253 (West 2008).

A trial court has wide latitude when it makes decisions on custody, control, possession, and visitation of children. *In re T.J.S.*, 71 S.W.3d 452, 458 (Tex. App.—Waco 2002, pet. denied). We review a trial court's decision on such matters for an abuse of discretion and will reverse that decision only if the record as a whole shows that the trial court abused that discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Texas 1982). If a trial court acts arbitrarily or unreasonably, without reference to any guiding rules or principles, it has abused its discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support its decision. *In re Marriage of Jeffries*, 144 S.W.3d 636, 639 (Tex. App.—Texarkana 2004, no pet).

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002 (West 2008); *Lenz v. Lenz,* 79 S.W.3d 10, 14 (Tex. 2002). A rebuttable presumption exists that the standard possession order is in the child's best interest and provides reasonable minimum possession for a parent named as a joint managing conservator. TEX. FAM. CODE ANN. § 153.252 (West 2008).

However, if special circumstances make the standard possession order unworkable or inappropriate, "[t]he court shall render an order that grants periods of possession of the child as similar as possible to those provided by the standard possession order." Section 153.253; *In re T.J.S.*, 71 S.W.3d at 458. When it considers a deviation from the standard possession order, the trial court may consider the age, developmental status, circumstances, needs, and best interest of the child; the circumstances of the managing conservator and of the parent named possessory

4

conservator; and any other relevant factors. TEX. FAM. CODE ANN. § 153.256 (West 2008); *In re T.J.S.*, 71 S.W.3d at 458.

On this record, we cannot say that the trial court abused its discretion when it did not deviate from the standard possession order, and neither can we say that it abused its discretion when it did not restrict the residence of the children to Coryell County. In both instances, the evidence we have outlined above constitutes some evidence of a substantive and probative character to support the trial court's decision. Therefore, we cannot say that the trial court abused its discretion in either case. *In re Marriage of Jeffries*, 144 S.W.3d at 639. Further, under the testimony we have outlined, Dustin has not overcome the presumption that the standard possession order provides terms that satisfy the purposes stated in Section 153.251(b). Without deciding that he was required to do so, we do note that Dustin offered neither the trial court nor this court any proposal as to what he considered to be an appropriate deviation from the standard possession order. Dustin's first and second issues are overruled.

In Issue Three, Dustin complains that the trial court should not have awarded spousal maintenance. In Issue Four, Dustin argues that, in any event, the trial court should not have issued a withholding order in relation to the spousal maintenance.

We review an award of spousal maintenance under an abuse of discretion standard. *Chafino v. Chafino*, 228 S.W.3d 467, 474 (Tex. App.—El Paso 2007, no pet.). Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion. *Brooks v. Brooks*, 257 S.W.3d 418, 425 (Tex. App.—Fort Worth 2008, pet. denied). If there is some evidence of a substantive and probative character to support the trial court's decision or if reasonable minds could differ as to the result, then the trial court does not abuse its discretion. *In re Marriage of McFarland*, 176 S.W.3d 650, 656 (Tex. App.—Texarkana 2005, no pet.).

Chapter 8 of the Texas Family Code contains the provisions relative to spousal maintenance. TEX. FAM. CODE ANN. ch. 8 (West 2006 & Supp. 2011). Much of that chapter was amended subsequent to the date that the trial court entered the divorce decree and ordered the spousal maintenance in this case. However, the amendments to the provisions that govern this case did not take effect until September 1, 2011, after the trial court entered its orders. We will apply the former law to the facts of this case.

Section 8.051 of the Family Code provides that a trial court may order maintenance for either spouse under certain conditions. With the exception of situations not applicable here, the trial court may order spousal maintenance if the marriage has lasted ten years or more; if the spouse seeking maintenance lacks sufficient property, including property distributed to that spouse under the Family Code, to provide for the spouse's minimum reasonable needs; and if the spouse seeking maintenance clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs. Former TEX. FAM. CODE § 8.051(2)(C) (2005). The law in effect at the time of the trial court proceedings provided for a rebuttable presumption that that maintenance was not warranted unless the spouse seeking maintenance had "exercised diligence in seeking suitable employment" or in "developing the necessary skills to become self-supporting during a period of separation and during the time the suit for dissolution of the marriage is pending." Former TEX. FAM. CODE § 8.053(a)(1), (2) (2005).

The first requirement of Section 8.051(2) is met: the marriage lasted over ten years.

The evidence in this case shows that Patricia's expenses are approximately $500 more than her income. Dustin argues that, even so, there is no evidence that her expenses are for her "minimum reasonable needs" as required by Section 8.051(2)(C). He also complains that there is no evidence whether those expenses include children's expenses, whether the amount of child support is included to offset those expenses, or whether the description of her income was accurate.

The trial court admitted into evidence, without objection, Respondent's Exhibit 8. That exhibit was prepared by Patricia to show her "Monthly Budget." There is no definition in the Family Code of "minimum reasonable needs." The matter is one for the trial court to determine on a case-by-case basis. *Cooper v. Cooper*, 176 S.W.3d 62, 64 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Neither do we believe that proof of minimum reasonable needs requires the use of any magic terminology. Patricia testified that she has not spent any money on anything other than "normal" expenses—everyday, run-of-the-mill expenses. A review of Respondent's Exhibit 8 supports that testimony.

Dustin told the trial court that, at the time of separation, there had been deposits into the bank account of some $7,000 from his retirement account and approximately $5,000 from the parties' income tax refund. He also told the trial court that Patricia was to have made payments on the house and on the pickup that the trial court awarded her in the temporary orders entered in

6

this case. He also testified that Patricia did not use the money to pay on the house or the pickup because she did not want Clark and him living in the house and also wanted to damage his credit.

Contrarily, Patricia testified that she had paid three $1,000 payments on the house, a "couple" of $600 electric bills, two payments on the pickup that was ultimately repossessed, and various expensive medical bills and had bought clothes for the children. She also paid $2,400 on a P.T. Cruiser; her parents paid the rest of the cost of the vehicle. Additionally, she paid $2,800 to Dustin's mother on a pickup that he sold for $1,500. She had $384 in the bank at the time of trial. Patricia was renting an apartment for $350 per month and had the P.T. Cruiser; Dustin had a vehicle.

As the trier of fact, the trial court was the judge of the credibility of the witnesses and of the weight to be given to their testimony. *Wright v. Wright*, 280 S.W.3d 901, 908 (Tex. App.—Eastland 2009, no pet.). We believe that the evidence that we have outlined constitutes some evidence that Patricia lacked sufficient property, including property distributed to her in the divorce, to provide for her minimum reasonable needs. A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support its decision. *In re Marriage of McFarland*, 176 S.W.3d at 656; *In re Marriage of Jeffries*, 144 S.W.3d at 639.

However, in order to be eligible to receive spousal maintenance, Patricia also must have shown that she clearly lacked earning ability adequate to provide for her minimum reasonable needs. She testified that she had graduated from high school and had gone to college for one year, in 1994, when she studied commercial design. She had been a stay-at-home mother until the twins were approximately nine years old. At that time, she went to work for one year, was off for one year, and had returned to work for a year at the time of the divorce hearing. She was working for Tejas Real Estate and was earning $8 per hour; she worked twenty-eight hours per week. Patricia had applied for full-time work at a prison approximately thirty times. She had applied for full-time work at the courthouse, at an insurance office, and online through Apple Staffing. Patricia introduced copies of rejection letters that she had received in response to her efforts to obtain full-time employment. She does not have any special training. Dustin testified that there were no physical or mental issues that would prevent Patricia from working at a full-time job. Patricia agreed that there was no reason that she was not able to work full-time. She has looked into the possibility of bettering herself by taking online courses in interior design or graphic design.

7

We hold that the above evidence constitutes some evidence that, at the time of the award of spousal maintenance, Patricia clearly lacked earning abilities that were adequate to provide for her minimum reasonable needs. We hold that the evidence we have outlined is some evidence that overcomes the rebuttable presumption provided for in former Section 8.053 of the Family Code. The outlined testimony is some evidence that Patricia had "exercised diligence in seeking suitable employment." She had applied many times for full-time work. Further, the testimony constitutes at least some evidence that, in examining available online courses and in seeking employment in various different fields, Patricia was attempting to acquire the necessary skills to become self-supporting while she and Dustin were separated and while the divorce case was pending. *See* former Section 8.053(a)(1), (2). A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support its decision. *In re Marriage of McFarland*, 176 S.W.3d at 656; *In re Marriage of Jeffries,* 144 S.W.3d at 639. Dustin's third issue is overruled.

In his fourth issue on appeal, Dustin argues that the trial court erred when it issued a spousal maintenance withholding order some nine days after it issued the decree of divorce. At the time of the withholding order, former Section 8.059(e) provided, "A court may enforce an order for spousal maintenance under this chapter by ordering garnishment of the obligor's wages." Former TEX. FAM. CODE § 8.059(e) (2001). Furthermore, Section 8.101(a) also specifically permits spousal maintenance to be withheld from income. We will confine our review to the specific issues that he raises. Those issues are that the trial court erred when it issued the withholding order because (1) the decree made no specific reference to Chapter 8 of the Texas Family Code; (2) there was no finding that Patricia was disabled or lacked sufficient earning capacity; (3) the decree did not list any criteria shown in Chapter 8; (4) the decree did not contain a list of the reasons for terminating the support, including upon cohabitation or remarriage; (5) the decree did not provide how the payments were to be made; (6) there was no legal duty under Chapter 8 for Dustin to support Patricia; and (7) because the support was not ordered under Chapter 8, the payments constituted contractual alimony, and contractual alimony, in the absence of an agreement to withhold, is not subject to the provisions of Chapter 8 pertaining to withholding.

As we have said, Chapter 8 of the Texas Family Code, both before and after the amendments to Chapter 8, contains the provisions relative to maintenance. We know of no

8

provision in Chapter 8, as it existed at the time of the entry of the decree and order in this case, wherein it is required that a decree of divorce that contains an order for the payment of spousal maintenance must specifically refer to Chapter 8 or to the criteria in it, including a recitation of the statutory reasons for termination of the payment of spousal maintenance. Those provisions govern spousal maintenance whether they are specifically included in the decree or not. Dustin has cited us to no case law to support these claims.

We agree that there was no explicit finding that Patricia was disabled or lacked sufficient earning capacity. However, although Dustin requested that the trial court enter findings of fact and conclusions of law, the record does not reflect that any were entered. After the findings were due, Dustin did not file a "notice of past due findings." TEX. R. CIV. P. 296, 297. He has waived any complaint that the trial court failed to include a finding on Patricia's lack of earning capacity. *Gnerer v. Johnson*, 227 S.W.3d 385, 389 (Tex. App.—Texarkana 2007, no pet.). Dustin does not challenge the sufficiency of the evidence in his fourth issue in this regard, only that there was no such finding.

Dustin cites us to an alimony case in support of his proposition that withholding spousal maintenance from the obligor's income is not appropriate. *Kee v. Kee*, 307 S.W.3d 812 (Tex. App.—Dallas 2010, pet. denied). In that case, "there [was] no specific reference to chapter eight" and "no finding in the decree that [the] Wife was disabled or lacked sufficient earning capacity," and the "decree failed to set forth any of the criteria of chapter eight." We agree that the decree in *Kee* did not contain those provisions. However, when we read *Kee*, we find it to be distinguishable. There, the parties had entered into a partition or exchange agreement. The agreement provided for the payment of alimony if the parties divorced. The parties did ultimately divorce, and the trial court ordered Mr. Kee to pay a total of $3,400 per month for alimony and child support. Later, Mrs. Kee filed a notice that she wanted the alimony payments to be the subject of a withholding order. Mr. Kee sought to abate the imposition of the withholding order, and the trial court, on appeal from an associate judge's refusal to terminate the withholding order, terminated the writ of withholding. On appeal from the trial court's ruling, the issue was whether the alimony payments were ordered pursuant to Chapter 8 or pursuant to the agreement of the parties and were, therefore, contractual alimony.

The question is important because Chapter 8 does not apply to alimony provisions in a divorce decree that simply restate the contract for alimony that the parties have made. *Id.* at 814.

9

In such a situation, the alimony provision is nothing more than a debt. *Id.* at 816; *see In re Green*, 221 S.W.3d 645, 648 (Tex. 2007) (a promise to pay contractual alimony creates nothing more than a debt). In this appeal, there was no contract upon which to base an order of withholding; there was no such agreement. The only ground other than contractual alimony upon which the trial court could order spousal support, under the facts of this case, was as provided for in Chapter 8. *See* former Section 8.059(e). We note that the trial court set the period of time to be covered by the payments at thirty-six months, the period of time set forth in Section 8.054(a)(1) as it existed at the time that the trial court ordered the payments. Former TEX. FAM. CODE § 8.054(a)(1) (2006). We do not think that the provision in the decree that provides for the tax treatment of the spousal maintenance payments somehow converts the spousal maintenance into contractual alimony when there was no contract between the parties for spousal maintenance payments.

Finally, as his last argument in Issue Four, Dustin asserts that there is no method for how these payments should be made. We have read the decree carefully and note that the payments are to be paid monthly by Dustin to Patricia on the first day of each month for thirty-six months. Unlike the child support provisions contained in another part of the decree, the payments are to be paid to Patricia, not through some third party or agency.

We have considered all of the arguments Dustin makes in Issue Four, and we conclude that the trial court erred neither when it awarded spousal maintenance nor when it subjected such maintenance to the withholding order. Issue Four is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


July 26, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

10