

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00093-CV
_____

IN THE MATTER OF THE MARRIAGE OF
MISTI COOPER AND KEVIN COOPER

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 21-0251

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

Kevin Cooper appeals from the trial court's final decree of divorce from Misti Cooper. On appeal, Kevin argues that the trial court abused its discretion by awarding spousal maintenance, by ordering him to refinance or sell the marital home, and by requiring each party to indemnify the other from tax liability. Because we find no error in the trial court's challenged rulings, we affirm the trial court's judgment.

## I.      Factual and Procedural Background

Misti and Kevin were married in 2007. In 2020, the couple separated, and Misti filed a petition for divorce in 2021. In her divorce petition, Misti asked the trial court to divide the community estate in a just and right manner. Even so, Misti sought a disproportionate share of the community estate due to, among other things, Kevin's fault in the breakup of their marriage and disparity of education, abilities, and earning power between her and Kevin. Misti asked for and was granted $500.00 in temporary spousal support per month for three months. In an amended petition, Misti also asked for "postdivorce [spousal] maintenance."

At trial, Misti testified that Kevin had affairs in 2010 and 2019 with two different women, and Kevin admitted that he fathered a child as a result of the latter affair and recently had a four-week-old child with a third woman.[1] In large part, Misti and Kevin agreed on the disposition of community assets, but Kevin asked the trial court to award him property located at

---

[1]Misti also requested that the divorce be granted on grounds of spousal abuse. She testified that she experienced many instances of spousal abuse by Kevin, including one instance where she sought emergency treatment because Kevin "hit[] [her] in the side of the head . . . and . . . bust[ed] [her] eardrum." Kevin also testified that he was physically abused by Misti, who had punched him in the face. Tonya Williams, who was a friend to both Misti and Kevin, said that they both drank too much and described their relationship as tumultuous. The trial court did not grant the divorce on grounds of spousal abuse.

19675 Farm-to-Market Road 450, Diana, Texas (the Diana House), "along with all of the debt associated with the property." The remaining relevant evidence dealt with Misti's request for spousal maintenance.

Misti testified that she was working early in the marriage, but that Kevin asked her to remain home in 2010 or 2011. Misti said she resumed working after the 2020 separation and, at the time of trial, was a bank teller at First National Bank of Hughes Springs, making roughly $1,600.00 per month. Misti testified that she had been on "food stamps" during the pendency of the divorce and that her monthly expenses were $950.00 in rent, $315.00 for her car payment, around $70.00 to $80.00 for credit cards, and $25.00 for storage. Misti said that, after paying her bills, she had anywhere from $180.00 to $210.00 left at the end of the month but would be paying $150.00 to $160.00 for car insurance after the divorce.

During cross-examination, Misti testified that she was able to pay her bills. When asked if she received income from other sources, Misti said, "Every now and then I'll clean a house or two." Even so, she testified that she had to borrow money from friends and family to make ends meet. Williams testified that she had loaned Misti "600, 200, a hundred, just whatever she needed" and that her father had lent Misti $5,800.00 "[t]o pay . . . back taxes."

Kevin said he did not ask Misti to stop working and claimed that they argued because he wanted her to work. He testified that he had once paid for Misti's "school to be able to" sell insurance, that she had sold insurance at one point, but that he did not know if Misti had a then-current license to do so. Kevin said that Misti had the ability to be gainfully employed, and he testified that she had worked for NAPA, Republic Industries, Patchwork Veterinary Clinic, and

3

his mother's quilting company. Kevin said that, during the last ten years of marriage, Misti had only "cleaned people's houses" and worked for his mother's quilting business and did not have any full-time employment because "[h]er drinking [did not] allow for that."

After hearing the evidence, the trial court entered a final decree granting Misti's petition for divorce on grounds of "adultery and insupportability." The final judgment contained three items that are the subject of Kevin's appeal. First, the trial court ordered Kevin to pay $250.00 for eighteen months in spousal maintenance. Second, the final judgment required Kevin to either refinance the Diana House solely in his name and pay Misti $40,000.00 or sell the house and pay Misti fifty-seven percent of the proceeds from the sale. Third, the final judgment required "each party [to] indemnify and hold the other party and the other party's property harmless from any tax liability associated with the reporting party's federal tax return for that year unless the parties [had] agreed."

## II.    The Trial Court Did Not Abuse Its Discretion by Awarding Spousal Maintenance

In its findings of facts and conclusions of law, the trial court found that Misti was entitled to spousal maintenance. "Findings of fact in a case tried to the court have 'the same force and dignity as a jury's answers to jury questions.'" *In re Marriage of Noble*, No. 06-16-00032-CV, 2016 WL 6543654, at *3 (Tex. App.—Texarkana Nov. 4, 2016, pet. denied) (mem. op.) (quoting *Lambright v. Trahan*, 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied) (quoting *39 Acres v. State*, 247 S.W.3d 384, 387 (Tex. App.—Texarkana 2008, pet. denied))).

In his first point of error, Kevin argues that "[t]he trial court abused its discretion by awarding . . . spousal maintenance" because Misti "testified that she had sufficient income to

4

meet her minimum needs[ and] failed to provide evidence that she had exercised sufficient diligence to earn" sufficient income or develop the skills needed to provide for her minimum needs. We disagree.

## A. Applicable Law

"An award of spousal maintenance is intended to provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support." *In re Marriage of McCoy*, 567 S.W.3d 426, 428–29 (Tex. App.—Texarkana 2018, no pet.) (quoting *In re Marriage of Hallman*, No. 06-09-00089-CV, 2010 WL 619290, at *5 (Tex. App.—Texarkana Feb. 23, 2010, pet. denied) (mem. op.)). "The trial court [has discretion to] award spousal maintenance only if the party seeking [it] meets specific [statutory] requirements." *Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex. App.—Dallas 2003, no pet.); *see* TEX. FAM. CODE ANN. § 8.051.

As applicable here, Misti was eligible for spousal maintenance only if she could show that she had been married to Kevin for at least ten years and that she lacked both sufficient property and "the ability to earn sufficient income to provide for [her] minimum reasonable needs." *See* TEX. FAM. CODE ANN. § 8.051(2)(B); *In re Marriage of Hallman*, No. 06-09-00089-CV, 2010 WL 619290, at *5 (Tex. App.—Texarkana Feb. 23, 2010, pet. denied) (mem. op.). In addition, when, as here, a party seeks spousal maintenance under subsection (2)(B), there "is a rebuttable presumption that [spousal] maintenance . . . is not warranted unless the spouse seeking maintenance has exercised diligence in: (1) earning sufficient income to provide for [her]

5

minimum reasonable needs; or (2) developing the necessary skills to provide for [her] minimum . . . needs" while the parties were separated and the case was pending. TEX. FAM. CODE ANN. § 8.053; *see Quijano v. Amaya*, No. 13-16-00485-CV, 2018 WL 1870476, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 19, 2018, no pet.) (mem. op.). The determination of a "spouse's minimum reasonable needs is . . . fact-specific [and determined] on a case-by-case basis." *Hallman*, 2010 WL 619290, at *5 (citing *Deltuva*, 113 S.W.3d at 888).

**B.      Standard of Review**

We review an award of spousal maintenance under an abuse-of-discretion standard. *In re Marriage of Lendman*, 170 S.W.3d 894, 899 (Tex. App.—Texarkana 2005, no pet.). "A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle." *In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.) (quoting *In re Marriage of Jeffries*, 144 S.W.3d 636, 638 (Tex. App.—Texarkana 2004, no pet.)). In our review, legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion but are not independent grounds of error. *Id.* (citing *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.)).

To make our determination, "we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion." *Id.* (citing *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.)). There is no abuse of discretion if there is some substantive and probative evidence that "support[s the trial court's] decision or if reasonable minds could differ as to the result." *In re*

6

*Marriage of McFarland*, 176 S.W.3d 650, 656 (Tex. App.—Texarkana 2005, no pet.) (quoting *Smith v. Smith*, 155 S.W.3d 303, 305 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.)).

### C.    Analysis

The evidence showed that Misti had been married to Kevin for well over ten years.  Misti testified that she stopped working in 2010 or 2011 because Kevin had asked her to remain home. While Misti might have made a little money from cleaning houses and working for Kevin's mother on occasion, she testified that she did not have a full-time job for at least ten years while married, creating a large gap in her work history.  Because Kevin was the provider for the couple, the trial court was free to find that Misti did not have sufficient income at the time of separation.

Also, there was evidence that Misti exercised diligence during the separation while the case was pending.  Misti testified that, after the separation, she obtained a full-time job as a bank teller and cleaned houses for extra money.  Although she testified that she could meet her minimum needs at the time of trial, Misti clarified that she was receiving governmental assistance through the Supplemental Nutrition Assistance Program and had to borrow money from family and friends to meet debt obligations and make ends meet.  Misti's testimony showed that she had approximately $180.00 to $210.00 left at the end of the month from her bank teller position but would be paying $150.00 to $160.00 for car insurance after the divorce, leaving her with little money.

"[A]s trier of fact, it is the province of the trial court to determine the credibility of the witnesses and the weight to be given their testimony, to believe or disbelieve all or any part of

7

the testimony, and to resolve any inconsistencies in the testimony." *In re Marriage of Edwards*, 79 S.W.3d 88, 102 (Tex. App.—Texarkana 2002, no pet.). From the facts discussed above and the fact that Misti had met the requirements for an award of temporary spousal maintenance before trial, the trial court could find that Misti lacked sufficient income to provide for her minimum needs. Even though Kevin testified that Misti once had a license to sell insurance and had the ability to be gainfully employed, the trial court could find that she lacked the ability to earn sufficient income considering the large gap in her employment history that potential employers would see.

Last, even though Kevin makes no express argument about the amount of spousal maintenance, he argues that Misti had to show that he had the means to pay spousal maintenance to be eligible to receive it.[2] The trial court heard testimony that Kevin worked in the oilfield and

---

[2]Kevin's brief fails to mention or address the following factors that are relevant in determining spousal maintenance, including:

> (1)      each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage;
> (2)      the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to earn sufficient income, and the availability and feasibility of that education or training;
> (3)      the duration of the marriage;
> (4)      the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance;
> (5)      the effect on each spouse's ability to provide for that spouse's minimum reasonable needs while providing periodic child support payments or maintenance, if applicable;
>          . . . .
> (7)      the contribution by one spouse to the education, training, or increased earning power of the other spouse;
> (8)      the property brought to the marriage by either spouse;
> (9)      the contribution of a spouse as homemaker;
> (10)     marital misconduct, including adultery and cruel treatment, by either spouse during the marriage; and
> (11)     any history or pattern of family violence, as defined by Section 71.004.

TEX. FAM. CODE ANN. § 8.052.

started his own land clearing and mulching business just before the separation. Kevin's gross income on his 2021 tax return was $74,721.00, although he claimed $58,998.00 in business losses. Although Kevin testified at trial that he was a month behind on some payments, the trial court knew that Kevin had sufficient income to provide for himself and Misti for the entire duration of the marriage and that Kevin was regularly able to pay "about eight or $9,000 a month in bills." Because the amount of spousal maintenance ordered was one-half the amount of the temporary maintenance Kevin was ordered to pay during the pendency of the case and because the trial court awarded Kevin substantial community assets, the trial court could find that Kevin had the ability to pay spousal maintenance.

Taken as a whole, we find that the trial court had sufficient evidence to determine that Misti was eligible to receive spousal maintenance. As a result, we find that the trial court did not act in an unreasonable or arbitrary manner or without reference to any guiding principle in awarding spousal maintenance. Consequently, we overrule Kevin's first point of error.

## III. There Was No Abuse of Discretion in the Handling of the Marital Residence

In his second point of error, Kevin argues that the trial court erred by ordering him to refinance or sell the Diana House, which was the marital residence, "when neither party had pleadings on file requesting such a requirement." Because both parties prayed for a just and right division of community property, we disagree.

The trial court awarded to Misti "[t]he sum of $40,000.00 as outlined in the judgment to equalize the division . . . , or . . . a **57% interest** from the net proceeds from the sale of the" Diana House. The trial court awarded the Diana House to Kevin "subject to refinancing within

9

90 days to [Kevin]'s sole name and the payment of $40,000.00 to Petitioner or the provisions regarding the sale of the residence as set forth in [the] Final Decree of Divorce." Under the heading "Sale of Residence," the final judgment stated:

> IT IS FURTHER ORDERED AND DECREED that the property and all improvements located thereon at Legal Acres: 5.349, Abst 99 J S Bell, HSE, according to the map, plat, or deed records of Harrison County, Texas, and more commonly known as 19675 FM 450 Diana, Harrison County, Texas, shall be sold under the following terms and conditions:
>
> 1. Respondent shall have 90 days from the entry of this Final Decree of Divorce to secure re-financing of the marital residence in his sole name. If Respondent is unable to secure refinancing, then the property shall be sold for a price that is mutually agreeable to Petitioner and Respondent. [T]he net proceeds shall be split with Petitioner awarded 57% and Respondent awarded 43% of the proceeds.
>
> 2. Respondent shall continue to make all payments of principal, interest, taxes, and insurance on the property during the pendency of the sale, and Respondent shall have the exclusive right to enjoy the use and possession of the premises until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid by Respondent.
>
> 3. The net sales proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property) shall be distributed as follows:
>
> > a. Petitioner awarded 57%
> >
> > b. Respondent awarded 43%.

As a result, the trial court gave Kevin the choice of remaining in the Diana House or selling it to accomplish a just and right division.

"Because the standards for dividing a community estate involve the exercise of sound judgment, a trial court must be accorded much discretion in its decision." *In re Marriage of Lewis*, No. 06-19-00046-CV, 2020 WL 34919, at *4 (Tex. App.—Texarkana Jan. 3, 2020, no

10

pet.) (mem. op.) (quoting *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018)). "The division 'should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair.'" *Id.* (quoting *Bradshaw*, 555 S.W.3d at 543) (quoting *Hedtke v. Hedtke*, 248 S.W. 21, 23 (Tex. 1923))). "[W]e will reverse the trial court's judgment only where it 'clearly abused its discretion and if the error materially affects the court's just and right division of the property.'" *Id.* (quoting *In re Marriage of Williams*, No. 06-18-00041-CV, 2018 WL 6424245, at *4 (Tex. App.—Texarkana Dec. 7, 2018, pet. denied) (mem. op.) (quoting *Bigelow v. Stephens*, 286 S.W.3d 619, 620 (Tex. App.—Beaumont 2009, no pet.))).

"In divorce proceedings, . . . if a homestead cannot be partitioned, it is subject to sale and a division of the proceeds." *Rodriguez v. Rivas*, 573 S.W.3d 447, 453 (Tex. App.—Amarillo 2019, no pet.) (citing *McIntyre v. McIntyre*, 722 S.W.2d 533, 537 (Tex. App.—San Antonio 1986, no writ); *Brock v. Brock*, 586 S.W.2d 927, 930 (Tex. App.—El Paso 1979, no writ), *overruled on other grounds by Howell v. Coca-Cola Bottling Co. of Lubbock, Inc.*, 599 S.W.2d 801, 802 (Tex. 1980) (per curiam). For this reason, dispositions that order either a refinance of a mortgage or a sale of the marital home have been blessed by Texas appellate courts. *See Cyree v. Cyree*, No. 03-21-00319-CV, 2022 WL 17835215, at *2, *9 (Tex. App.—Austin Dec. 22, 2022, no pet.) (mem. op.); *Owsley v. Owsley*, No. 13-18-00636-CV, 2022 WL 16842689, at *1 (Tex. App.—Corpus Christi–Edinburg Nov. 10, 2022, no pet.) (mem. op.).

Kevin argued that no party requested a refinancing or sale of the home, but the record shows that both parties' pleadings sought a just and right division of community property, which

11

gave the trial court broad discretion in how to accomplish the proper division. Moreover, Kevin specifically requested that he be awarded the Diana House "along with all of the debt associated with the property." As a result, the trial court did not abuse its discretion by requiring Kevin to either sell the home or absorb the debt on the Diana House through refinancing to remove Misti from the mortgage obligation.[3] We overrule Kevin's second point of error.

## III. Ordering Indemnification of Tax Liability Was Not an Abuse of Discretion

The trial court's final judgment stated the following:

> IT IS ORDERED AND DECREED that, for the calendar year 2022, each party shall file a federal income tax return and report thereon the reporting party's share of the income, gains, losses, deductions, and credits, including estimated taxes and withholding taxes, of the parties during the calendar year 2022 prior to the date of divorce, and of the reporting party on and after the date of divorce, in accordance with the I.R.[S]. and this decree.

> IT IS ORDERED AND DECREED that for calendar year 2022, each party shall indemnify and hold the other party and the other party's property harmless from any tax liability associated with the reporting party's federal tax return for that year unless the parties have agreed to allocate their tax liability in a manner different from that reflected on their returns.

---

[3]On November 14, Misti moved the trial court to enter final judgment and attached a copy of the proposed judgment. Kevin filed a written objection to Misti's motion but raised no complaint about the provision requiring him to either refinance or sell the home. The trial court heard the motion for entry of judgment on December 19 and, once again, Kevin raised no issues about that portion of the trial court's order.

To the extent Kevin complains that the trial court failed to account for closing costs, we find that Kevin could have, but did not, present evidence of such costs to the trial court. Yet, for the first time on appeal, Kevin argues that the trial court should have considered the costs to complete a refinance. Even though it was evident that Kevin "was going to incur some transaction costs," when reviewing the trial court's division of the marital estate, as a whole, we cannot conclude that any error by failing to account for an undisclosed amount of closing or other transaction costs had any material effect on the trial court's just and right division of the marital estate that would warrant reversal. *See Cyree*, 2022 WL 17835215, at *8.

Also, although not previously mentioned to the trial court, Kevin argues that it abused its discretion by "failing to fix Appellee's 57% as of the date of divorce" because it did not account for future mortgage payments during the ninety days that he had to make the sale. We find this complaint relating to the sale of the home inadequately briefed. *See* TEX. R. APP. P. 38.1(i). Moreover, nothing shows that the trial court failed to consider the mortgage payments Kevin would make during the ninety-day period when assigning Misti fifty-seven percent of the sale proceeds.

12

In his last point of error, Kevin argues that the trial court's indemnification provision was an abuse of discretion because he "was deprived of 'fair notice'" since "neither party's live pleadings on file . . . requested . . . indemnification relief." We disagree.

The parties' pleadings requested a just and right division of the community estate. "Debts and liabilities incurred jointly by the parties, such as federal income tax liabilities, must be considered by the trial court in determining a just and right division of the community estate and must be apportioned to one or both of the spouses." *Lynch v. Lynch*, 540 S.W.3d 107, 131 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (quoting *Kemp v. Kemp*, No. 11-11-00292-CV, 2013 WL 5891583, at *6 (Tex. App.—Eastland Oct. 31, 2013, no pet.) (mem. op.)); *see also Shelton v. Shelton*, No. 01-02-01009-CV, 2003 WL 22511463, at *4 (Tex. App.—Houston [1st Dist.] Nov. 6, 2003, no pet.) (mem. op.) ("It is well-settled that, although a tax liability is not technically a 'debt,' a trial court may, in a divorce case, take the parties' tax liability into consideration in its division of the marital estate . . . ."). Because the trial court heard that Kevin and Misti were separated since 2020, we find no abuse of discretion in the trial court's decision to have each indemnify the other from any tax liability associated with the reporting party's federal tax return for 2022. As a result, we overrule Kevin's last point of error.

## IV.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    May 22, 2023
Date Decided:    June 2, 2023