COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CATHERINE BELL, | § | No. 08-09-00247-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 388th District Court |
| CHRISTOPHER CAMPBELL, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#2006CM7838) |
| | § | |

## O P I N I O N

In two issues, Catherine Bell, Appellant, complains that the trial court abused its discretion when it named Christopher Campbell, Appellee, joint managing conservator with the exclusive right to establish the primary residence of their child. We affirm.

## BACKGROUND

Appellant and Appellee married in 2004 and their child, A.C., was born in February 2005. Appellant enlisted in the Army in November 2005, and was stationed at Fort Bragg, North Carolina. After separating in the latter part of 2005, Appellant petitioned for divorce and Appellee filed a counter petition for divorce. After a temporary-orders hearing in February 2007, which was conducted in Appellant's absence while she was deployed by the U.S. Army to Afghanistan, the trial court named both parties joint managing conservators with Appellee having the exclusive right to designate the temporary primary residence of A.C. within El Paso County. Later, a final hearing was held, and after considering the testimony of the parties and their relatives, the trial court granted the divorce, named Appellant and Appellee joint managing conservators, and awarded Appellee the exclusive right to designate A.C.'s primary residence within El Paso County.

**DISCUSSION**

Appellant complains that the trial court abused its discretion in granting Appellee the exclusive right to establish the residence of A.C. because: (1) for the last two years, Appellee failed to comply with the trial court's temporary order that he attend Children Cope With Divorce, also known as "COPE," a class designed to teach effective parenting during separation and divorce; and (2) the evidence demonstrated that such appointment was not in the best interest of A.C.

*Standard of Review*

The Family Code authorizes a trial court to name both parents joint managing conservators if it finds such designation to be in the best interest of the child. TEX. FAM. CODE ANN. §§ 153.002, 153.134(a) (Vernon 2008). The trial court is also required, in its order, to designate one of the joint managing conservators as having the exclusive right to determine the child's primary residence, to allocate other rights and responsibilities of the parents, and to include, among other requirements, provisions to minimize disruption of the child's education, daily routine, and association with friends. TEX. FAM. CODE ANN. § 153.134(b) (Vernon 2008).

We review a trial court's order regarding conservatorship under an abuse-of-discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Cisneros v. Dingbaum*, 224 S.W.3d 245, 257 (Tex. App. – El Paso 2005, no pet.). A trial court abuses its discretion when it acts arbitrarily and unreasonably or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Upon determining that the abuse-of-discretion-standard applies, we engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? *Cisneros*, 224 S.W.3d at 257, *citing Franco v. Franco*, 81 S.W.3d 319, 333 (Tex. App. – El Paso 2002, no pet.).

We recognize that the trial court is best situated to observe the demeanor and personalities of the witnesses and can "feel" the forces, powers, and influences that cannot be discerned by merely reading the record. *Cisneros*, 224 S.W.3d at 257, *citing Bates v. Tesar*, 81 S.W.3d 411, 424 (Tex. App. – El Paso 2002, no pet.) *and Jenkins v. Jenkins*, 16 S.W.3d 473, 477 (Tex. App. – El Paso 2000, no pet.). Consequently, we afford trial courts wide latitude in determining the best interests of the child. *Gillespie*, 644 S.W.2d at 451. Therefore, we cannot conclude that the trial court abused its discretion simply because we may have ruled differently under the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). If some evidence of a substantive and probative character exists to support the trial court's decision, no abuse of discretion has occurred. *Cisneros*, 224 S.W.3d at 257; *Bates*, 81 S.W.3d 424-25; *Jenkins*, 16 S.W.3d at 477.

*Best-Interest-of-Child Evidence*

<u>Temporary-Orders Hearing</u>

After entering the Army and separating from Appellee, Appellant's parents cared for A.C., and when the temporary-orders hearing was conducted in February 2007, Appellant had been deployed to and was stationed in Afghanistan. At the temporary-orders hearing, Appellee, when asked who would take care of A.C. while he was at work, first responded "a babysitter." However, Appellee admitted that the babysitter was his girlfriend, Esther, with whom he had lived for approximately one year at that time. In its temporary orders, the trial court, in part, named Appellee a temporary joint managing conservator, gave him a temporary, exclusive right to designate A.C.'s primary residence in El Paso, prohibited him from permitting an unrelated adult, with whom he had an intimate or dating relationship, to remain in the residence with the child from 8 a.m. to 8 p.m., and required that he attend the COPE program.

Final Divorce Hearing

At the final divorce hearing, the trial court judicially noticed that Appellee previously testified that his girlfriend and babysitter, Esther, had been living with him. Appellee admitted that he had violated the trial court's temporary orders requiring him to attend the COPE program and prohibiting him from permitting an unrelated adult with whom he had an intimate or dating relationship to remain in the residence with the child from 8 a.m. to 8 p.m.[1] During both his separation from Appellant and the pendency of the divorce proceedings, Appellee had not only been living with Esther but had fathered their two children as well.

The trial court also considered evidence that since the parties' separation in November 2005, Appellee had been employed in four or five different jobs and had resided in four or five different locations. At the time of the final divorce hearing, Appellee was working the graveyard shift at Wal-Mart and also held a part-time job, working more than 60 hours per week. He testified that he planned to enroll A.C. in elementary school at age five.

There were no allegations of mental or physical abuse although the trial court heard evidence that A.C. had received a burn to her forehead after running towards Appellee or Esther, one of whom was holding a cigarette. Appellee's mother, Ms. Ramos, who worked at a medical clinic, testified that she applied a cream used for radiological burns to A.C.'s burn.[2] Although Appellant's mother, Ms. Allen, took a photograph of the burn which was admitted into evidence, it is not contained in the appellate record. Appellee informed Appellant about the incident and explained that it was an accident.

On another occasion, Ms. Ramos observed that A.C. had an infection. She notified Appellee,

---

[1] Appellee testified that he did not attend the COPE classes because he did not know what COPE was.

[2] The cream was originally prescribed for Appellee's grandmother.

who then directed her to request that Ms. Allen, who had the insurance card and a medical power of attorney, to take A.C. for medical care.[3] Ms. Allen took A.C. to an Army hospital from which A.C. was transferred by ambulance to another hospital, where she spent three days receiving medical care. Ms. Allen accompanied A.C. in the ambulance during her transfer. Appellee arrived at the second hospital and was present while Ms. Allen completed the admission papers. Ms. Allen spent the night at the hospital with A.C., but Appellee did not as he needed to go to work. Appellee, his mother, and his stepfather visited A.C. while she was hospitalized.

Before he was named joint managing conservator, Appellee provided four or five payments of $100-$150 towards A.C.'s care. Evidence was also presented that Appellee would play with A.C., take her to the park and to the movies, cooked for her, and bathed her. Appellee stated that he had a special bond with A.C. and he was seeking to have custody of her because he felt A.C. would suffer if removed from the family members with whom she had been interacting since she was born, including his and Appellant's parents and other family members. Appellee testified that he did not own a computer and did not believe he could afford to travel to visit A.C. in North Carolina based upon his earnings.

The evidence showed that Appellant had been an enlisted member of the United States Army for several years, was stationed at Fort Bragg, North Carolina, was in a stable work environment and was progressing admirably in her profession, from which she hoped to retire after twenty or thirty years of service. As a result of her employment, Appellant was providing A.C. with medical, dental, and vision benefits. Appellant also explained the opportunities and restrictions related to her requests to be stationed in or near El Paso, where A.C. and all of the child's other family members

---

[3] Although the temporary orders awarded Appellee the independent right to consent to medical and other care for A.C., the evidence indicated that he did not have a full understanding of this right.

were living. In support of her request to have the exclusive right to determine A.C.'s permanent residence, the evidence showed that if A.C. was permitted to live with Appellant, Appellant could work a shift that comported with A.C.'s schedule and would permit them to have more time together, and that A.C. would have access to: (1) good schools and daycare; (2) a varied cultural community; (3) community programs; and (4) world-wide travel to non-combat areas.

Appellee testified that Appellant is a very good and loving mother who is capable of caring for A.C. When in El Paso, Appellee had permitted Appellant to have almost unfettered access to A.C. When not in El Paso, Appellant communicated with A.C. by telephone and through the use of web cameras, and Appellant stated that she was willing to purchase the equipment necessary for Appellee to maintain visual communication with A.C. in the event she obtained the exclusive right to designate A.C.'s primary residence. Appellant testified that she was in favor of Appellee and A.C.'s grandparents having access to A.C. and, while unaware of some potential financial responsibilities for securing the travel necessary to allow Appellee and the grandparents to visit A.C. or vice-versa, Appellant was generally agreeable to paying those necessary costs. If assigned overseas, Appellant said she would like to take A.C. with her and was willing to pay all expenses to send A.C. to spend the summer with Appellee.

Appellant stated that she was not in any other personal relationship because being involved in a relationship with anyone other than Appellee, to whom she was still married, could result in her being dishonorably discharged from the Army and losing insurance coverage for A.C.

After reviewing the record, we find that the trial court's decision to appoint Appellee joint managing conservator with the exclusive right to establish primary residence falls within the zone of reasonable disagreement. The trial court was aware of Appellee's non-compliance with its temporary orders and the other complained-of evidence raised in Appellant's appeal. As the

testimony showed, by residing in El Paso, A.C. would have access to all of her family members, including Appellant when Appellant was able to return home. Additionally, all of A.C.'s family members in El Paso, including Appellant when not in El Paso, had communicated and cooperated well together in furtherance of A.C.'s care and well-being. A.C. was being well-provided for and was not being mistreated or abused. Therefore, we find the trial court had sufficient, substantive, and probative evidence upon which to exercise its discretion. *Cisneros*, 224 S.W.3d at 257, *citing Franco*, 81 S.W.3d at 333. Considering all the evidence presented to the trial court, we conclude that the trial court did not abuse its discretion in appointing Appellee to serve as the joint managing conservator with the exclusive right to establish A.C.'s primary residence. *Id.* Appellant's issues on appeal are overruled.

## CONCLUSION

The trial court's judgment is affirmed.


November 3, 2010                                          GUADALUPE RIVERA, Justice

Before Chew, C.J., McClure, and Rivera, JJ.