# NO. 12-18-00109-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE MATTER OF THE MARRIAGE OF THOMAS SHEP HALL AND JENNIFER THERESA OLLER AND IN THE INTEREST OF K. N. H., A CHILD* | *§* | *APPEAL FROM THE 349TH* |
| | *§* | *JUDICIAL DISTRICT COURT* |
| | *§* | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jennifer Theresa Oller appeals the trial court's final decree of divorce. She presents two issues on appeal. We affirm in part and reverse and remand in part.

## BACKGROUND

Thomas Shep Hall married Jennifer Theresa Oller on January 28, 2013, and they are the parents of one child, K.N.H. On August 16, 2017, Hall filed an original petition for divorce, requesting that he be granted the right to designate the primary residence of the child and requesting that Oller be ordered to pay child support. Oller filed an answer and counter-petition for divorce, requesting that she be named conservator with exclusive right to designate the child's primary residence and that Hall be required to pay child support.

The parties waived a jury trial and the case was submitted to the court. Hall and Oller reached an agreement regarding the property division. When the case was called for trial in February 2018, Hall's counsel recited the agreements. Following testimony and evidence, the trial court named the parties joint managing conservators and granted Hall the right to determine the child's primary residence. The trial court further ordered that Hall continue to provide K.N.H.'s health insurance but that Oller reimburse Hall in the amount of $115 per month. The court orally rendered judgment that Oller pay $600 per month in child support but the written decree set the child support amount at $454 per month.

Oller filed a request for findings of fact and conclusions of law.  She also filed a notice of appeal.  Following completion of the record, we abated the case to allow the trial court to make findings of fact and conclusions of law.  Those findings were filed on October 1, 2018.

## RIGHT TO DESIGNATE PRIMARY RESIDENCE

In her first issue, Oller argues that the trial court abused its discretion in appointing Hall as joint managing conservator with the exclusive right to determine the child's residence.  She contends that Hall has never raised a child and has substantial health issues.  She further argues that the separation of K.N.H. from her half-brother is not in her best interest. She challenges the legal sufficiency of the evidence to support the trial court's findings.

**Standard of Review**

We review the trial court's order under an abuse-of-discretion standard. *Iliff v. Iliff*, 339 S.W.3d 126, 133 (Tex. App.–Austin 2009), *aff'd,* 339 S.W.3d 74 (Tex. 2011); *see Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990) (per curiam) (child support); *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex. 1982) (conservatorship, control, possession, and access). We will not disturb the trial court's ruling unless a clear abuse of discretion is shown. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.–Austin 2006, pet. denied). "A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.–Austin 2014, no pet.) (quoting *In re Marriage of Jeffries*, 144 S.W.3d 636, 638 (Tex. App.–Texarkana 2004, no pet.)). When reviewing for abuse of discretion, "legal and factual sufficiency of the evidence are not independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion." *Id.* (citing *Zeifman,* 212 S.W.3d at 587); *In re Davis*, 30 S.W.3d 609, 614 (Tex. App.–Texarkana 2000, no pet.). In considering whether the trial court abused its discretion, we determine (1) whether there was sufficient evidence upon which to exercise its discretion and if there was, (2) whether the application of its discretion was erroneous. *Id.*; *Zeifman,* 212 S.W.3d at 588 (citing *Echols v. Olivarez*, 85 S.W.3d 475, 477–78 (Tex. App.–Austin 2002, no pet.)). We use the traditional sufficiency review in determining the first question. *Zeifman,* 212 S.W.3d at 588 (citing *Echols,* 85 S.W.3d at 478). We then determine whether, based on the evidence, the court's decision was arbitrary or unreasonable. *Id.*

"When the appellate record includes the reporter's and clerk's records, . . . the trial court's findings, express or implied, are not conclusive and may be challenged on appeal for evidentiary sufficiency." *Lopez v. Rendsland*, No. 03–10–00084–CV, 2010 WL 4053787, at *5 (Tex. App.–Austin Oct. 12, 2010, no pet.) (mem. op.) (citing *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003)). However, the trial court has wide discretion in determining what is in the best interest of the child and its findings will not be disturbed absent an abuse of discretion. *Avila v. Avila*, No. 03–05–00030–CV, 2006 WL 2986225, at *4 (Tex. App.–Austin Oct. 20, 2006, no pet.) (mem. op.) (citing *Gillespie*, 644 S.W.2d at 451; *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.–Austin 2003, no pet.)).

A trial court's findings of fact are reviewed by the same standards as a jury verdict. *Id.* In determining legal sufficiency, the appellate court determines "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 582 (Tex. App.–Texarkana 2012, no pet.). In looking at the evidence, we credit favorable evidence if a reasonable jury could and disregard contrary evidence unless a reasonable jury could not. *City of Keller*, 168 S.W.3d at 827. The evidence is legally insufficient if (1) there is a complete absence of evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a mere scintilla of evidence offered to prove a vital fact, or (4) the opposite of the vital fact is conclusively established by the evidence. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010); *Zeifman*, 212 S.W.3d at 588. When reviewing the legal sufficiency to support a finding, "we examine the record for evidence and inferences that support the challenged finding, while disregarding all contrary evidence and inferences." *Zeifman*, 212 S.W.3d at 588.

Further, in a trial to the bench, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.–Austin 2012, no pet.); *see City of Keller*, 168 S.W.3d at 819. This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn*, 433 S.W.3d at 823 (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.–Houston [14th Dist.] 2009, no pet.)). Therefore, we defer to the trial

court's judgments that involve credibility determinations and its factual resolutions affected by those determinations. *Id.*

**Applicable Law**

In determining conservatorship, the best interest of the child shall be the primary consideration. TEX. FAM. CODE ANN. § 153.002 (West 2014). The trial court has wide latitude in determining the best interest of a child, and the decision of the trial court will be reversed only when it appears from the record as a whole that the court abused its discretion. *Marriage of Stein,* 153 S.W.3d 485, 488 (Tex. App.—Amarillo 2004, no pet.). Texas courts have long recognized certain nonexclusive factors to be considered in determining the best interest of a child:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*See Holley v. Adams,* 544 S.W.2d 367, 372 (Tex. 1976); *Matter of Marriage of Bertram,* 981 S.W.2d 820, 822–23 (Tex. App.—Texarkana 1998, no pet.) (applying *Holley* factors for best interest determination in conservatorship proceeding). When appointing joint managing conservators, the trial court shall designate the conservator who has the exclusive right to determine the primary residence of the child. TEX. FAM. CODE ANN. § 153.134(b) (West 2014).

**Analysis**

Oller contends the trial court abused its discretion in granting Hall the right to determine K.N.H.'s primary residence. She argues the evidence showed that he had never raised a child and had substantial health problems. Oller further argues that the ruling will result in the separation of K.N.H. from her half-brother. She also complains that the trial court's findings are unsupported by the record.

Three people testified at the hearing: Hall, Oller, and K.N.H.'s teacher, Laura Vaughn. Ms. Vaughn teaches at Southside Baptist Childcare and is K.N.H.'s primary teacher. She testified that K.N.H. has done well at school and is progressing well. She further testified that Hall has been very involved in his daughter's education and activities. He asks about how K.N.H. is doing weekly and threw her a birthday party at school. Ms. Vaughn further stated that Hall has spoken

4

with her about K.N.H.'s weight issues and that he is keeping her healthy and active at home. In contrast, Ms. Vaughn testified that K.N.H. comes to school with an odor of cigarette smoke when she has been with her mother.

Hall testified that he wants his daughter to live in the same home her entire life, which is the home in which he currently resides. He has been employed for nineteen years with the Texas Department of Corrections (TDC) and currently has Saturdays, Sundays, and Mondays off. He leaves the house at 5:00 in the morning for work. His mother resides with him and prepares K.N.H. for school. A friend of Hall's drives to the house and takes K.N.H. to school. Hall then picks K.N.H. up from school after he gets off work at 3:30 in the afternoon. According to Hall, K.N.H. loves her school and is doing well there. Hall claims to be very involved in K.N.H.'s education. He began playing games with her using flash cards so that she can learn more. There was also testimony that Oller forgot to pick K.N.H. up from school on one occasion.

Hall further testified that K.N.H.'s pediatrician is concerned about her being overweight. To help her lose weight, Hall takes K.N.H. to the park to play and for walks in the afternoons. Hall also prepares her meals, which include chicken or turkey and vegetables. He testified that he does not believe Oller helps K.N.H.'s habits. Hall further stated that K.N.H. had a tooth removed due to an infection that began in her gums. He believed that Oller did not give K.N.H. her antibiotics for the infection as prescribed because of how many pills remained in the bottle. In addition, Hall claimed Oller was unsupportive of the dental visit and accused Hall of putting K.N.H. through unnecessary pain.

In response to the accusation that he is unable to physically care for K.N.H., Hall stated that he did the laundry, cleaning, and cooking while he and Oller were married. He admitted to having Crohn's disease, but Hall stated that it does not ordinarily interfere with his daily activities. He is currently on medication that is "working great." The previous year, he had a reaction to a medication and spent nineteen days in the hospital. However, that was not an ordinary occurrence. Hall also testified that K.N.H. suffers from seizures. When her temperature rises, she has a "zombie-like seizure" in which she becomes nonresponsive. The doctor instructed them to give K.N.H. a Tylenol suppository to reduce her temperature and then have her seen by a doctor. According to Hall, K.N.H. had a seizure while at Oller's house and Oller did not immediately take her to a doctor. Hall met Oller and K.N.H. at the doctor's office the following Monday morning.

5

Hall testified that K.N.H. smells like cigarette smoke and has knots in her hair after visitations with her mother. He further testified that K.N.H. is often congested and requires breathing treatments with a nebulizer for two or three days after returning from visitations with Oller.

Oller testified that K.N.H. "needs to be with her mom." She further testified that Oller's residence is a four-bedroom house that she shares with her mother, brother, son, and daughter. Each of those occupants has their own room and Oller sleeps either in her daughter's room or on the couch. In the preceding four years, she has worked at Wal-Mart, TDC, and Chili's. She currently works for Brookshire Brothers. Oller testified that she is an assistant store director and that she just completed her training with Brookshire Brothers. She explained that when the quarter is over, the director was supposed to inform her as to where she will be working. Oller testified that she is hoping for an opening in the Buffalo store because it is only ten miles from her residence. However, at the time of the hearing, she did not know in what city she would be working. Oller claimed to have no intentions of moving. With regard to her work schedule, Oller testified that she generally works from 1:00 in the afternoon until 10:00 at night. She is usually home by 11:00. She admitted that, if she were to have possession of K.N.H. during the week, K.N.H. would be at school while she is not working.

Oller further testified that she would not agree to Hall's request that the order prohibit overnight guests of the opposite sex until K.N.H. turns eighteen. She stated that she is open with her children and asks for their opinions if she has "intentions of making a big jump." She also testified that she believes K.N.H. would benefit from enrolling in Oakwood I.S.D., which is where her son attends school.

Oller agreed to not smoke cigarettes around K.N.H. She claimed that K.N.H. would smell like cigarettes because the smell is absorbed into her vehicle's fabric. She further claimed that she did not know K.N.H. had a breathing problem that was exacerbated by cigarette smoke. Oller testified that she contacted Hall following K.N.H.'s seizure and asked if he wanted her to schedule an appointment to which he responded that he would do it. She also claimed to have given K.N.H. her antibiotics as prescribed by the dentist. Oller further testified that K.N.H. suffered from pain due to inadequate hygiene when she is with her father.

In its findings, the trial court determined, in pertinent part, that (1) it is in K.N.H.'s best interest that Hall have the right to designate her residence, (2) Oller smokes in K.N.H.'s presence,

(3) Hall lived in the same residence his entire life, (4) Oller has instability in her employment and housing and did not know where she would ultimately reside, (5) Hall had no intention of removing himself or K.N.H. from Anderson County, while Oller could not commit to remaining in the county, (6) Oller forgot to pick up K.N.H. from school, (7) K.N.H. suffers from a medical condition with seizures, Hall always provides for immediate emergency medical attention, and Oller waits to seek emergency medical attention or no medical attention at all, (8) Hall tends to K.N.H.'s educational needs more diligently than Oller, including altering his work schedule to be able to pick her up from school, (9) Oller felt it appropriate to seek approval from K.N.H. to move in with a paramour despite K.N.H.'s age and that if K.N.H. was okay with the paramour moving in, Oller would move the paramour into the residence, and (10) Oller was written up for having inappropriate contact with an inmate while employed with TDC and has had several men with whom she had an intimate relationship around K.N.H. throughout K.N.H.'s life.

Based on our review of the evidence, we cannot say the trial court abused its discretion in appointing Hall as the joint managing conservator with the exclusive right to designate K.N.H.'s primary residence. The evidence shows that Hall is an active and involved parent. He is actively involved in K.N.H.'s education and actively engaged in making sure her medical needs are met, including weight and seizure management. The evidence further showed that Oller is not as involved in K.N.H.'s education and medical needs. In addition, the evidence demonstrates that Hall has stable housing and employment. At the time of the hearing, Oller had completed her training but was unsure as to where she would ultimately be working. Moreover, the trial court heard evidence that K.N.H. is doing well in school and loves her school, whereas, Oller desires to place K.N.H. in a different school.

The trial court was in the best position to observe the demeanor and personalities of the witness and able to "'feel' the forces, powers, and influences that cannot be discerned by merely reading the record." **Bell v. Campbell**, 328 S.W.3d 618, 620 (Tex. App.—El Paso 2010, no pet.). We defer to the trial court's determinations regarding the credibility of the witnesses. As sole judge of the weight and credibility of the evidence, the trial court was entitled to determine which evidence to credit and, in doing so, could reasonably conclude that it was in the child's best interest that Hall be given the exclusive right to determine the child's primary residence. *See City of Keller,* 168 S.W.3d at 819, 827. We, therefore, find no abuse of discretion and overrule Oller's first issue.

In her second issue, Oller argues that the trial court abused its discretion in awarding child support without evidence of her current income.

**Standard of Review and Applicable Law**

We review a trial court's judgment granting child support under an abuse of discretion standard. *Worford*, 801 S.W.2d at 109; *Miles v. Peacock*, 229 S.W.3d 384, 388 (Tex. App.— Houston [1st Dist.] 2007, no pet.). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules and principles. *Worford*, 801 S.W.2d at 109; *McGuire v. McGuire*, 4 S.W.3d 382, 384 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). "In the child-support context, sufficiency challenges are not independent points of error, but are incorporated into an abuse of discretion determination." *McGuire*, 4 S.W.3d at 387 n.2; *see Newberry v. Bohn–Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We employ a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Moreno v. Perez*, 363 S.W.3d 725, 735 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Texas Family Code Chapter 154 governs child support proceedings and sets forth guidelines to apply in determining an equitable amount of child support. *See* TEX. FAM. CODE ANN. §§ 154.001–.309 (West 2014 & Supp. 2018). Chapter 154 instructs that the trial court "shall calculate net resources for the purpose of determining child support liability as provided by this section." *Id*. § 154.062(a) (West 2014). "Net resources" includes all wage and salary income, self-employment income, and all other income actually received. *Id*. § 154.062(b). "There must be some evidence of a substantive and probative character of net resources in order for the court to discharge its duty under [S]ection 154.062." *Miles*, 229 S.W.3d at 389 (quoting *Newberry*, 146 S.W.3d at 236) (internal quotations omitted). Absent evidence of a party's wage and salary income, a court shall presume that the party's wages or salary equals the federal minimum wage for a 40–hour week. TEX. FAM. CODE ANN. § 154.068 (West Supp. 2018).

**Analysis**

Oller contends that the trial court lacked sufficient evidence to calculate her net resources because no evidence established her current income. Thus, she maintains that the trial court was required to presume that her wages or salary equals the federal minimum wage for a 40-hour week.

With respect to this issue, the trial court found that Oller's available net resources allow her to pay child support, per the Texas Family Code child support guidelines, of $454.00 per month based on her testimony that she would be making $38,500.00 per year once she completed her training with Brookshire Brothers at the end of the quarter, making her monthly net resources the sum of $2,598.50.

We agree that the record reveals no evidence concerning Oller's current wages, salary, or income. No documents in evidence demonstrate Oller's monthly salary. The testimony at the hearing showed that Oller completed her training at Brookshire Brothers and is currently employed. And everyone agreed that Oller was told she "would be making $38,500" once she received her assignment. However, her assignment was to be given at the end of the quarter and was undetermined at the time of the hearing. No other evidence of Oller's current resources was offered. Because the record contains no evidence of Oller's salary or income, we conclude that there is insufficient evidence to support the trial court's finding that Oller has net resources of $2,598.50 per month. *See **Marquez v. Moncada**,* 388 S.W.3d 736, 739-40 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Miles*, 229 S.W.3d at 390. Accordingly, we sustain Oller's second issue.

In rectifying this error, Oller requests that we render judgment that she pay the statutory minimum in child support. She argues that, in the absence of evidence of her net income, the trial court could have presumed that her monthly gross wages equaled the federal minimum wage for a 40–hour week and awarded child support under the statutory guidelines in accord with that calculation. *See* TEX. FAM. CODE ANN. § 154.068(a).

We decline to render judgment as requested by Oller. It is undisputed that Oller owes some undetermined amount in child support and calculating Oller's net resources is only one step in assessing child support. Under the Texas Family Code, the court must also ascertain the number of children before it, determine the percentage of net resources that a non-custodial parent would pay under the guidelines, and consider whether any additional factors would justify varying from the guidelines. *See id.* § 154.121 (West 2014) ("the child support guidelines ... are intended to guide the court in determining an equitable amount of child support"); *see also id.* § 154.122 (West

2014) (permitting court to determine that application of guidelines would be unjust or inappropriate); *id.* § 154.123 (West 2014) (listing factors for court to consider in deciding whether to impose support obligation differing from amount calculated under family code guidelines). Under these circumstances, remand, not rendition, is appropriate. *See Office of Atty. Gen. of Tex. v. Burton,* 369 S.W.3d 173, 174 (Tex. 2012) (per curiam) (concluding that no evidence supported trial court judgment in suit to confirm child support arrearage and remanding case to trial court for further proceedings); *see also Moreno,* 363 S.W.3d at 736 (concluding that trial court should have applied the minimum wage presumption and remanding for further proceedings as to portion of order setting forth mother's net resources and finding and imposing support obligation); *Miles,* 229 S.W.3d at 390–91 (reversing trial court's calculation of appellant's net resources and remanding for further proceedings). We therefore remand the case to the trial court for further proceedings regarding Oller's net resources and current and retroactive child support obligations.

## CONCLUSION

We have overruled Oller's first issue and sustained her second issue. Because the record contains legally insufficient evidence to support the trial court's award of child support, we *reverse* that portion of the order setting forth Oller's child support obligations, and we *remand* for further proceedings consistent with this opinion, including a determination as to Oller's net resources. In all other respects, we *affirm* the order of the trial court.

BRIAN HOYLE
Justice

Opinion delivered February 28, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 28, 2019**

**NO. 12-18-00109-CV**

**IN THE MATTER OF THE MARRIAGE OF THOMAS SHEP HALL AND JENNIFER THERESA OLLER AND IN THE INTEREST OF K. N. H., A CHILD**

Appeal from the 349th District Court
of Anderson County, Texas (Tr.Ct.No. DCCV17-528-349)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the portion of the order setting forth Oller's child support obligations be **reversed** and the cause **remanded** to the trial court **for further proceedings** consistent with this opinion, including a determination as to Oller's net resources. In all other respects, we **affirm** the order of the trial court; all costs of this appeal are hereby adjudged against the party incurring same, in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*