COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MARGARET KATHLEEN YEANDLE, | § | No. 08-23-00042-CV |
| Appellant, | § | Appeal from the |
| v. | § | 201st Judicial District Court |
| MATTHEW YEANDLE, | § | of Travis County, Texas |
| Appellee. | § | Cause No. D-1-FM-20-004338 |

## MEMORANDUM OPINION[1]

Appellant Margaret Yeandle appeals from the trial court's final decree of divorce rendered in her divorce from Appellee Matthew Yeandle.[2] On appeal, Margaret presents four issues complaining she was deprived her due process right to a full and fair hearing and that the trial court erred in both its custody and property division determinations. Finding no error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Margaret and Matthew Yeandle were married in October 2014. The parties had one child born during their marriage, in March 2020. In August 2020, Matthew filed for divorce. The trial

---

[1] This case was transferred from the Austin Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of that court to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

[2] Because the parties share the same last name, we will use their first names throughout the opinion for clarity and brevity.

court held a final hearing over the span of three days in July 2022. The trial court heard testimony from both parties, family, friends, and Margaret's counselor. Additionally, the parties submitted evidence which included requested property divisions with proposed valuations of the marital property, family photos, and different correspondence between the parties. The evidence at trial focused on the division of marital property and the parenting of their child. At the close of testimony, the trial court announced it was granting the divorce as of that day but was taking the issues under advisement.

On July 25, 2022, the trial court delivered its ruling to the parties via email. The trial court appointed the parties joint managing conservators with Matthew having the exclusive right to designate the primary residence of the child in Travis County or Hays County. Margaret was awarded the expanded standard possession order and was ordered to pay $0 in child support. The trial court made additional orders involving the parenting of the child. The trial court also issued orders concerning the parties' property including awarding specific items to Matthew and the remainder of the estate to be "split 50/50."

The trial court signed the Final Decree of Divorce on December 21, 2022. The decree reflected the trial court's ruling as to the issues related to their child. Additionally, the decree confirmed certain assets to be the separate property of the parties. Then, the decree divided the marital estate by awarding certain assets to each party, including proceeds from the sale of the marital home, with $104,738.93 being awarded to Matthew and $69,825.95 being awarded to Margaret. It also divided community debt between the parties, with each party being responsible for debt remaining on any loan on the vehicle awarded to them, certain credit card and loan balances, and their own attorney's fees.

The trial court entered findings of fact and conclusions of law on February 17, 2023. This appeal followed.

## ISSUES ON APPEAL

Margaret presents four issues on appeal. In her first and second issues, Margaret asserts the trial court deprived her of due process by accepting ex parte evidence, unsworn statements, and other testimonial evidence after trial but before the final decree was entered. In her third issue, Margaret asserts the trial court abused its discretion because there was insufficient evidence to support its designation of Matthew as the primary joint managing conservator. Finally, Margaret contends the trial court abused its discretion in dividing the marital property disproportionately.

## POST-TRIAL DUE PROCESS

Because Margaret raises due process violations in both her first and second issues, we address them together. In both issues she contends she was deprived of due process due to exchanges of information between the court and the parties.

On July 25, 2022, after the trial ended but before the decree was entered, the trial court emailed the parties asking whether they had reached any agreements. Matthew responded by describing his position on possession of the child and seeking a geographic restriction of the child's residence. Attached to his response were excerpts from the "Our Family Wizard" website program, a messaging system used by the parties to co-parent their child and communicate about other issues. Margaret also responded wherein she claimed that Matthew had not yet replied to a settlement offer and she did not want to negotiate directly without involvement of her attorney.

Later that same day, the trial court issued its ruling. The trial court ordered Matthew to draft a proposed decree and circulate it. Should the parties agree on the proposed decree, the trial court ordered the parties to submit it to the court. If there was no agreement, the trial court ordered the parties to submit the proposed decree with Margaret's "proposed redlines." In October, Matthew sent the court and Margaret the proposed decree, his proposed property division spreadsheet, and attached exhibits. On November 2, 2022, Margaret filed a motion for new trial

3

requesting the trial court set aside improper unsworn testimony by Matthew and an objection to the consideration of ex parte evidence submitted by Matthew.

The next day, the trial court denied the motion concluding no hearing was necessary. The trial court stated that its ruling was based solely on the evidence admitted at trial and not on communications after trial. The trial court further explained that, on the morning of July 25, it had already made its ruling but asked the parties if they reached an agreement before it issued its rulings. When it learned there was no agreement, the trial court then issued its ruling.

Margaret contends the trial court accepted voluminous ex parte evidence post trial, thereby depriving her of due process. In response, Matthew contends that no ex parte communication occurred and that the trial court did not consider any improper evidence. Moreover, Matthew urges that Margaret waived any error by failing to make a timely objection to any communication and evidence, and, in any event, Margaret did not suffer any prejudice.

### A. Standard of review and applicable law

Claims asserting a deprivation of constitutional rights, such as due process of law, are questions of law that we review de novo. *See Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 446 (Tex. App.—Austin 2011, pet. denied). A person may not be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1; TEX. CONST. art. 1, § 19. As well, a parent has a fundamental liberty interest in the care, custody, and management of their child. *A.G. v. Tex. Dep't of Fam. and Protective Servs.*, No. 03-22-00502-CV, 2022 WL 10714200, at *3 (Tex. App.—Austin Oct. 19, 2022, no pet.) (mem. op., per curiam) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).

"[T]he 'right to be heard' is fundamental to the concept of due process and . . . a litigant's right to be heard generally includes 'the right to a full and fair hearing before a court having jurisdiction over the matter,' 'the right to introduce evidence and to examine witnesses,' and 'the

4

right to have judgment rendered only after a trial on the merits.'" *Ross v. Sims*, No. 03-16-00179-CV, 2017 WL 672458, at \*5 (Tex. App.—Austin Feb. 15, 2017, pet. ref'd) (mem. op.) (quoting *Soefje v. Jones*, 270 S.W.3d 617, 625 (Tex. App.—San Antonio 2008, no pet.)). Due process requires that a person be given the "opportunity to be heard at a meaningful time and in a meaningful manner[.]" *Texas Educ. Agency v. Am. YouthWorks, Inc.*, 496 S.W.3d 244, 263, n. 106 (Tex. App.—Austin 2016, pet. ref'd) (quoting *Matthews v. Eldridge*, 424 U.S.319, 333 (1976)) (cleaned up).

## B. Analysis

First, we reject Margaret's contention that emails exchanged between the court and the parties constituted ex parte communications. Ex parte communications are communications that involve fewer than all of the parties who are legally entitled to be present during the discussion of any matter. *Interest of J.B.P.*, No. 04-22-00045-CV, 2022 WL 2960246, at \*3 (Tex. App.—San Antonio July 27, 2022, no pet.). All the emails show that a copy was sent to Margaret's trial counsel. Margaret admits receiving copies of all of them. Moreover, Margaret also took part in sending emails to the trial court in response to its email. Accordingly, the email communications were not ex parte. *See id.* at \*4.

Next, Margaret complains the emails at issue violated her due process rights by depriving her of the right to be heard. To begin, it is undisputed here that that the trial court conducted a three-day trial wherein, at the close of the final session, the court pronounced it had granted the parties' divorce and otherwise took the remaining issues under advisement. Additionally, as stated above, Margaret was heard on the issue of post-trial communications through her evidentiary motion for new trial, which was denied by written order. Further, there is no showing that the trial court considered any of the emails in its rulings. In fact, the trial court specifically stated it considered only legally admitted evidence in rendering its judgment.

On the record presented, we conclude that Margaret had an opportunity to be heard and was heard in a meaningful manner. *See Am. YouthWorks*, 496 S.W.3d at 263 n. 106. We overrule Margaret's first and second issues.

## CONSERVATORSHIP AND PROPERTY DIVISION

In her third issue, Margaret asserts the trial court abused its discretion by designating Matthew as the primary joint managing conservator. In her fourth issue, she contends the court abused its discretion in dividing the marital property disproportionately.

### A. Standard of review

We review a trial court's determination of conservatorship and property division for an abuse of discretion. *See Regost v. Regost*, 2022 WL 4349323, at *6 (Tex. App.—Austin September 20, 2022) (mem. op.) (conservatorship and possession); *Banister v. Banister*, 2023 WL 3956818, at *1 (Tex. App.—Austin June 13, 2023, no pet.) (mem. op.) (division of marital estate); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (determination of best interest of child "will be reversed only when it appears from the record as a whole that the court has abused its discretion"). "A trial court does not abuse its discretion unless it acts in an unreasonable or arbitrary manner or without reference to any guiding principle, and we may not reverse for abuse of discretion merely because we disagree with the decision." *Regost*, 2022 WL 4349323, at *6.

In this context, we examine whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in the application of its discretion. *Id.* If some substantive and probative evidence exists supporting the trial court's decision, there is no abuse of discretion. *Id.* Challenges to the legal and factual sufficiency of the evidence are not independent grounds of error; rather, they are relevant factors in determining whether the trial court had sufficient information upon which to exercise its discretion. *Id.* Legal sufficiency exists when the evidence at trial "would enable reasonable and fair-minded people to reach the verdict under

6

review," and we are to "credit evidence favorable to the finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not." *Id.* (citing *Teal Trading & Dev., L.P. v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 333 (Tex. 2020)). Whether the trial court had factually sufficient evidence is determined by considering and weighing the entire record, and we "set aside the finding only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust." *Id.* (quoting *Gonzales v. Maggio*, 500 S.W.3d 656, 662 (Tex. App.—Austin 2016, no pet.).

In reviewing either legal or factual sufficiency, we bear in mind that the trier of fact is the "sole judge of the credibility of the witnesses and the weight to be given their testimony." *Id at 7.* (quoting *In re P.A.C.*, 498 S.W.3d 210, 214 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)). A trial court's findings of fact are equivalent to jury answers to special issues. *Id.* We are bound by unchallenged findings of fact "unless the contrary is established as a matter of law or there is no evidence to support the finding." *Id.* (quoting *Morris v. Veilleux*, No. 03-20-00385-CV, 2021 WL 4341967, at *5 (Tex. App.—Austin Sept. 24, 2021, no pet.) (mem. op)).

## B. The designation of the child's primary residence

In her third issue, Margaret contends the trial court had insufficient evidence to support its designation of Matthew as the child's primary managing conservator. We disagree.

When appointing parents as joint managing conservators, a trial court must designate the parent who has the exclusive right to determine the child's primary residence. TEX. FAM. CODE ANN. § 153.134(b)(1). The best interest of the child shall always be the primary consideration in determining conservatorship, possession of, and access to the child. *Id.* § 153.002; *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). "Suits affecting the parent-child relationship are 'intensely fact-driven' and require courts to balance many factors." *Billisits v. Billisits*, No. 03-21-00358-CV, 2023 WL 2191330, at *2 (Tex. App.—Austin Feb. 24, 2023, no pet.) (mem. op.). Due to the

7

intensely fact-driven nature of conservatorship determinations, a trial court has wide latitude in determining a child's best interest. *Id.* at *3.

In reviewing issues concerning the best interest of the child, courts are often guided by the non-exhaustive list of *Holley* factors:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Additionally, the trial court may consider the following factors in determining the best interest of the child in appointing the parents as joint managing conservators:

(1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;

(2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;

(3) whether each parent can encourage and accept a positive relationship between the child and the other parent;

(4) whether both parents participated in child rearing before the filing of the suit;

(5) the geographical proximity of the parents' residences;

8

(6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and

(7) any other relevant factor.

TEX. FAM. CODE ANN. § 153.134.

Margaret's challenge of the trial court's discretion on this issue is limited to its appointment of Matthew as the conservator with the right to determine the residence of the child and she does not otherwise challenge the geographic restriction imposed. Margaret concedes the evidence at trial presented that both parties were capable, available, and willing to care for the child. Rather, Margaret's contention on appeal is that there was no evidence to support Matthew as the conservator with the exclusive right to designate the child's primary residence because the court's determination "ignore[d] the stability *Holley* factor and flip[ed] the only lifestyle the child has ever known on its head." She believes the trial court was influenced by evidence of her struggles with post-partum depression and of the parties' relationship during a "tumultuous time" that had since been resolved.

We first note the trial court did not make any findings or conclusions regarding Margaret's post-partum depression. Rather, the trial court made the following relevant findings of fact and conclusions of law:

18. Testimony and evidence provided by both parties . . . demonstrated the difficulty of the parties to reach agreements, including but not limited to possession of the child.

. . .

21. The determination of the rights that [Matthew] retains at all times is made pursuant to Section 153.073(b) of the Texas Family Code. In making the decision, the Court considered credible evidence of disruption of the child's daily activities, including retaliatory actions by [Margaret].

. . .

28. The Court finds that [Matthew] is a capable parent and attempted to work amicably with [Margaret]. The Court finds that out of the two parties that [Matthew] should have the right to designate the child's primary residence.

9

> The Court finds that it is in the best interest of the child that [Matthew] is named the Primary Conservator with the right to designate the child's residence in Travis County or Hays County, Texas.
>
> .    .    .    .

48. [Margaret] accused [Matthew] of destroying the child's family by filing divorce [].

49. [Margaret] refused to allow [Matthew] to have overnight visitation [].

50. [Margaret] refused to allow [Matthew's] visits to last more than three hours [].

51. [Margaret] accused [Matthew] of trying to "take the child away from her" by filing for divorce [].

52. [Matthew] cared for the child both before and during the current suit.

53. [Matthew] is available and willing to personally care for the child.

At trial, the court heard evidence of Margaret yelling and name calling Matthew while the child was present. Additionally, there was evidence that Margaret withheld the child from Matthew, limited his access to her, and intentionally withheld breastmilk from the child during Matthew's periods of possession. Margaret asserts this evidence should not be used against her as she had been battling against postpartum depression which had been exacerbated by Matthew being unfaithful to her. Such evidence was not objected to at trial. Furthermore, Margaret fails to support her argument with any authority that the trial court should not have considered this evidence. On the other hand, the record includes evidence of Matthew's desire to co-parent and work amicably with Margaret for the benefit of their child.

The trial court's extensive findings of fact affirmatively demonstrate that it considered the relevant factors listed in Family Code § 153.001(a) and applicable factors discussed in *Holley*. *Billisits*, 2023 WL 2191330, at *5. Margaret failed to establish that the trial court's findings are unsupported by probative evidence admitted at trial or that its determination that it was in the child's best interest that Matthew be appointed the conservator with the right to establish the child's primary residence was an abuse of discretion. *See id.* There is often no perfect solution

when parties divorce or separate, and the trial court is tasked with making the difficult decision that will impact the parties and the child. *Fuentes v. Jasso*, No. 08-03-00109-CV, 2004 WL 1078498, at *3 (Tex. App.—El Paso May 13, 2004, no pet.) (mem. op.) (recognizing the "painful reality that where two devoted parents are divorced, this sort of hard choice is sometimes inevitable"). However, we are "not to second-guess the trial court's decision or express how we might have ruled differently; instead, our job is to ensure that the trial court did not act unreasonably, arbitrarily, or without reference to guiding principles of family law in reaching its decision." *Billisits*, 2023 WL 2191330, at *6.

We find the trial court had sufficient substantive and probative evidence upon which to exercise its discretion. *See Bell v. Cambell*, 328 S.W.3d 618, 622 (Tex. App.—El Paso 2010, no pet.). Considering all the evidence presented to the trial court, we conclude that the trial court did not abuse its discretion in appointing Matthew as the joint managing conservator with the exclusive right to establish the child's primary residence. *See id.*

We overrule Margaret's third issue.

## B. Property division

In her fourth and final issue, Margaret contends the trial court abused its discretion in dividing the marital property disproportionately. Specifically, she complains the trial court divided the proceeds from the sale of the marital residence in the amounts of $104,738.93 to Matthew and $69,825.95 to Margaret. Margaret argues there was no evidence to support such a disproportionate division of marital property.

The Family Code provides that the trial court must divide the estate of the parties "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001. The "just and right" standard is the sole method used to divide community property upon divorce. *Schlueter v. Schlueter*, 975 S.W.2d 584,

11

588 (Tex. 1998). "Such a standard may at times lead to a disproportionate division of assets and liabilities of the parties, depending on the circumstances that courts may consider." *Id.* "When the circumstances demonstrate a reasonable basis for it, a trial court may order an unequal division of community property." *Laake v. Laake*, No. 03-19-00841-CV, 2020 WL 4726748, at *3 (Tex. App.—Austin Aug. 14, 2020, pet. denied) (mem. op.) (quoting *Leax v. Leax*, 305 S.W.3d 22, 34 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

Margaret contends that the trial court did not have sufficient evidence to divide the proceeds from the house in an unjust manner. She further asserts there was no evidence that an additional $30,000 was subtracted from the net proceeds of the marital home to satisfy Margaret's attorney's fees before a division of the asset (as Margaret had requested), while Matthew's almost $30,000 debt for his attorney's fees, which was listed as a debt, resulted in an unjust enrichment to Matthew to the extent of those amounts.

To prevail on appeal, however, Margaret shoulders a burden to show this particular award had more than a de minimis effect on the just and right division of the entire estate. *Laake*, 2020 WL 4726748, at *3. Due to the lengthy list of assets held by the marital estate, the division of their property included several types and kinds of property. Among the marital estate were multiple bank accounts, life insurance policies, vehicles, retirement accounts, and multiple credit card debts. On this record, we cannot say the division of the entire estate is so disproportionate as to be manifestly unjust. *Id*. We further conclude the trial court had sufficient evidence upon which it was able to exercise its discretion to effectuate a just and right division of the marital estate. *Regost*, 2022 WL 4349323, at *6. As a consequence, Margaret has not shown the abuse of discretion necessary to prevail on appeal.

We overrule Margaret's fourth issue.

12

## CONCLUSION

We affirm the trial court's decree of divorce.

GINA M. PALAFOX, Justice

October 16, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.