

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00002-CV

---

## IN THE INTEREST OF L.T. AND W.T., CHILDREN

---

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2013-505,551, Honorable Kelley Tesch, Associate Judge Presiding

---

April 30, 2024

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant, Mother, appeals from the trial court's order modifying the parent-child relationship that named her possessory conservator of her two children, L.T. and W.T.[1] In her sole issue, Mother argues the trial court erred by appointing Father sole managing conservator with the exclusive right to determine the residence of L.T. and W.T. We affirm the trial court's order.

---

[1] To protect the privacy of the parties involved, we refer to the appellant mother as "Mother," the appellee father as "Father," and the children as L.T. and W.T. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

BACKGROUND

Mother and Father were divorced in Dallas County in 2017. They were appointed joint managing conservators with Mother having the exclusive right to designate the primary residence of then six-year-old L.T. and three-year-old W.T.

The parties resided in the Dallas area at the time of the divorce in 2017. Mother testified that Father did not visit the children regularly and did not telephone them or give them presents. She acknowledged that she and the children "moved a lot," and that she did not communicate with Father. During this time, Mother was homeless for one to two weeks. The children stayed with their paternal grandmother and Mother "chose to stay in [her] car." Beginning in 2020, while she was employed as a service coordinator for Metrocare Services, Mother was stalked and harassed by a work colleague. In June of 2022, Mother quit her job and she, L.T., and W.T. moved to Alabama briefly because of the trauma associated with the stalking. When her job in Alabama did not work out, Mother and the children returned to Dallas to get their belongings, then moved to Lubbock to live with their maternal grandmother. Mother did not tell Father that she was taking the children to Alabama or that she was residing in Lubbock as of August of 2022.

The Texas Department of Family and Protective Services became involved with Mother and the children in September of 2022. The Department opened an investigation after receiving a report alleging that Mother was neglectful in her supervision of L.T. and W.T. The report alleged that Mother was suffering from paranoid delusions and severe mental health issues. During its investigation, the Department learned that Mother purchased a chainsaw for protection because she claimed an unknown person was

2

stalking her. Mother withdrew L.T. and W.T. from school to homeschool them. However, she had not followed through with homeschooling. Maternal grandmother reported that Mother attempted to "cast a demon" from L.T. and agreed with the Department that Mother should have no unsupervised contact with L.T. and W.T. due to concerns with Mother's untreated mental health issues. The Department filed an original petition for the protection of L.T. and W.T. The petition also requested the termination of Mother's and Father's parental rights. After a temporary hearing, the Department was appointed temporary managing conservator and the children were placed in Father's care in Arlington. Mother and Father filed counter-petitions to modify the parent-child relationship.

After the Department removed L.T. and W.T. from her care, Mother received mental health treatment. She was hospitalized for forty-eight hours at Parkland Hospital in Dallas and then admitted to a psychiatric hospital for thirty days. She was diagnosed with bipolar disorder with psychosis "and forced to take medication." Mother was prescribed several medications, including Rexulti, Risperdal, and Trazodone. Beginning in December of 2022, Mother had follow-up appointments with a doctor in Lubbock who continued her medications. She was supposed to continue taking her medications as prescribed, but as of the time of trial, she had not taken her medications for several months because she experienced severe side effects, and it was "absolutely unhealthy for [her] and [her] body." Mother disagrees with the diagnosis she received at the psychiatric hospital and says she has paperwork from her Lubbock doctor that changed her diagnosis to anxiety with panic attacks, insomnia, and depression. This doctor has retired, and Mother is waiting to see her doctor in Dallas to obtain an evaluation to

determine if she needs medication.  She will not take medication for a diagnosis that she does not believe is appropriate.  None of the health care professionals Mother has seen has told her to stop taking her medications as prescribed.

Jasmyn Brown, a permanency specialist with St. Francis Ministries, testified that Mother and Father completed the family service plans implemented for each parent by the Department.  L.T. and W.T. have lived with Father and Stepmother in Arlington since November of 2022.  The children attend Berry Elementary and have made friends.  They are A and B students.  L.T. and W.T. have thrived in Father's home.  Father and Stepmother provide a safe, stable, and loving environment for L.T. and W.T.  Mother communicates with Stepmother to arrange visitation with L.T. and W.T.  The children love both their parents and do not want to have to choose between them.

After the hearing, the associate judge dismissed the Department and appointed Father as sole managing conservator of L.T. and W.T.  The court appointed Mother as possessory conservator with supervised possession of the children.  The court found that these orders were in the children's best interest.  Mother appeals, contending the trial court abused its discretion by appointing Father sole managing conservator.[2]

## STANDARD OF REVIEW

A trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession.  *In re A.M.,* 604 S.W.3d 192, 196 (Tex. App.—Amarillo 2020, pet. denied).  Accordingly, we review a decision to modify

---

[2] This case was submitted on Mother's brief only since the Department was dismissed and Father did not appeal.

conservatorship for an abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court may modify a conservatorship order if modification would be in the best interest of the child and the circumstances of the child, a conservator, or another party affected by the order have materially and substantially changed since the date of the rendition of the prior order. TEX. FAM. CODE ANN. § 156.101(a)(1)(A).[3] We will not disturb a trial court's decision in a modification case unless the complaining party shows a clear abuse of discretion, meaning the trial court acted in an arbitrary and unreasonable manner or without reference to guiding principles. *In re A.M.,* 604 S.W.3d at 196–97. In our review of a modification order under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Id.* at 197. An appellate court applies a two-prong analysis when it determines whether legal or factual insufficiency has resulted in an abuse of discretion: (1) whether the trial court had sufficient information upon which to exercise its discretion, and (2) whether the trial court erred in applying its discretion. *Id.* The sufficiency review is related to the first inquiry. If it is revealed in the first inquiry that there was sufficient evidence, then we must determine whether the trial court made a reasonable decision, and that involves a conclusion that the trial court's decision was neither arbitrary nor unreasonable. *Id.* The trial court's exercise of discretion will withstand appellate scrutiny unless clearly abused. *In re A.D.T.,* 588 S.W.3d 312, 319 (Tex. App.—Amarillo 2019, no pet.).

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

## APPLICABLE LAW

In determining conservatorship and possession issues, the best interest of the child shall always be the primary consideration. § 153.002. We review a trial court's best-interest finding by using the well-established *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4]

Because of the fact-intensive nature of reviewing custody issues, an appellate court must afford great deference to the factfinder on issues of credibility and demeanor because the child's and parents' behavior, experiences, and circumstances are conveyed through words, emotions, and facial expressions that are not reflected in the record. *Chavez v. Chavez,* 148 S.W.3d 449, 458 (Tex. App.—El Paso 2004, no pet.).

## ANALYSIS

In her sole issue, Mother contends that the trial court abused its discretion by modifying the previous order and appointing Father sole managing conservator of the children. Mother does not challenge the finding that the circumstances of the children or parties have materially and substantially changed since the divorce; rather, she contends that the modification to sole managing conservatorship is not in the best interest of the children. *See* § 156.101(a)(1)(A). We disagree.

---

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.* In the context of a custody modification, other factors to consider include the child's need for stability and the need to prevent constant litigation. *In re V.L.K.,* 24 S.W.3d 338, 343 (Tex. 2000).

A child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). The record reflects that L.T. and W.T. were placed with Father shortly after their removal from Mother's custody and had lived with Father and Stepmother for more than a year at the time of trial. Father and Stepmother are providing L.T. and W.T., currently ages eleven and eight, with a safe, stable, and structured home environment, in which the children are thriving. They have made friends at school and have perfect attendance. Father owns his home, and he has been employed full-time as a supervisor at American Building Maintenance for four years. Moreover, Father and Stepmother accommodate and encourage L.T. and W.T.'s relationship with Mother.

In contrast, the trial court heard evidence that Mother moved L.T. and W.T. frequently and struggled to maintain a stable home environment while they were in her care. On two occasions, Mother and the children were homeless. Mother described being stalked and harassed for a period of years which led to her fleeing to Alabama because she feared for her life and the lives of her children. The trial court also heard testimony concerning Mother's erratic behavior leading to the Department's intervention and Mother's hospitalization to treat her mental health issues. During the pendency of the case, Mother refused to take medications prescribed by her treating physicians, had difficulty staying employed, and was sleeping in her car for days at a time.

The trial court was in the best position to observe the demeanor and personalities of the witnesses and was able to "'feel' the forces, powers, and influences that cannot be discerned by merely reading the record." *Bell v. Campbell*, 328 S.W.3d 618, 620 (Tex.

App.—El Paso 2010, no pet.). We defer to the trial court's determinations regarding the credibility of the witnesses. As sole judge of the weight and credibility of the evidence, the trial court was entitled to determine which evidence to credit, and, in doing so, could reasonably conclude that it was in L.T. and W.T.'s best interest that Father be appointed sole managing conservator.

Because some evidence of a substantive and probative character exists to support the trial court's decision, we conclude the trial court did not err in finding it is in the best interest of L.T. and W.T. to designate Father as the sole managing conservator with the right to designate the residence of the children. *See Holley*, 544 S.W.2d at 371–72. Mother's sole issue is overruled.

## CONCLUSION

Finding no abuse of discretion, we overrule Mother's sole issue and affirm the trial court's judgment.


Judy C. Parker
Justice